# EXHIBIT C

Deed Book 46519 Pg 545
Filed and Recorded Mar-26-2008 04:03pm
2008-0070852
Georgia Intangible Tax Paid $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Space Above Reserved for Recording Information

The outside maturity date for the obligation secured is no later than April 19, 2011, subject to options and conditions, and **no Georgia Intangibles Tax is due hereon.**

This instrument should be returned to:

Robert W. Scholz, Esq.
Dietrick, Evans, Scholz & Williams, LLC
3490 Piedmont Road, Suite 1200
Atlanta, Georgia 30305

The Calaccio Law Firm, LLC
Kevin T. Calaccio, Esq.
3455 Peachtree Road
Suite 500
Atlanta, Georgia 30326

THIS INSTRUMENT IS A "CONSTRUCTION MORTGAGE" AS THAT TERM IS DEFINED IN SECTION 334 OF ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE OF GEORGIA, O.C.G.A. § 11-9-334(h), AND SECURES AN OBLIGATION FOR THE CONSTRUCTION OF IMPROVEMENTS UPON LAND

## DEED TO SECURE DEBT, ABSOLUTE ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

THIS INDENTURE is made on March 19, 2008 by and between:

**ODYSSEY (VI) COMMERCIAL DP III, LLC,**
a Florida limited liability company, whose address is
500 S. Florida Ave
Suite 700
Lakeland, FL 33801
hereinafter referred to as **"Borrower"**; and

**BRANCH BANKING AND TRUST CO.,** whose address is
950 East Paces Ferry Road
Suite 2575
Atlanta, GA 30326
Attention: Commercial Real Estate Lending,
hereinafter referred to as **"Lender"**;

Ln#: 9542002260-00002

Deed Book 46519 Pg 546

1. <u>Description of Obligations Secured</u>

Borrower is indebted to Lender in the original principal amount of Five Million One Hundred Seventy-Five Thousand Dollars and No Cents ($5,175,000.00) which indebtedness is evidenced by a Promissory Note dated March 18, 2008, which provides for periodic payments, with the full debt, if not paid earlier, due and payable in full on March 18, 2010, with optional and conditional Extension Option for extended maturity date of no later than April 18, 2011.

This Deed to Secure Debt, Security Agreement and Absolute Assignment of Rents is made and intended to secure: (i) the obligations of Borrower aforesaid and as set forth herein; (ii) any and all future advances made thereunder or otherwise evidenced, and all renewals extensions, modifications thereof, and substitution or substitutions therefor, either in whole or in part; (iii) the full and prompt payment and performance of all of the provisions, agreements, covenants and obligations herein contained and contained in each other document executed by Borrower to govern repayment of or secure the Indebtedness (the "**Loan Documents**"); (iv) any and all additional advances made by Lender pursuant to this Security Deed or the other Loan Documents to protect or preserve the Property (hereinafter defined) or the lien or security interest created hereby on the Property, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Borrower's obligations hereunder or under the other Loan Documents or for any other purpose provided herein or in the other Loan Documents (whether or not the original Borrower remains the owner of the Property at the time of such advances); and (v) all indebtedness now or hereafter owing by Borrower to Lender, however or whenever created, incurred, arising or evidenced, whether direct or indirect, joint or several, absolute or contingent, or due or to become due, and any and all renewal or renewals, extension or extensions, modification or modifications of and substitution or substitutions for, said indebtedness, either in whole or in part. The said secured obligations are hereinafter sometimes referred to collectively as the "**Secured Obligations.**" This Deed to Secure Debt, Security Agreement and Absolute Assignment of Rents is hereinafter sometimes referred to as this "**Security Deed.**"

2. <u>Description of Property and Grant</u>

FOR AND IN CONSIDERATION of the financial accommodations to Borrower by Lender resulting in the obligation which is hereinafter more particularly described, and in order to secure that obligation, Borrower does hereby irrevocably grant, bargain, sell, assign, warrant, transfer, and convey to Lender, and grant a security interest to Lender in, the following property, appurtenances, rights, interests, and estates of Borrower, whether now owned or hereafter acquired by Borrower (all such property, appurtenances, rights, interests, and estates being herein referred to collectively as the "**Property**"):

(a)     All tracts, pieces, or parcels of land located in **Fulton County, Georgia** as more particularly described on **Exhibit A** hereto (the "**Land**");

(b)     All buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements, and improvements of every nature whatsoever now or hereafter erected or located on the Land (the "**Improvements**");

Ln#: 9542002260-00002

(c)  All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, air rights, and development rights, minerals, flowers, shrubs, crops, trees, timber, and other emblements now or hereafter located on, under, or above the Land or any part or parcel thereof, and all ground leases, estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, appurtenances, reversions, and remainders whatsoever in any way belonging, relating, or appertaining to the Land and the Improvements or any part thereof, or which hereafter shall in any way belong, relate, or be appurtenant thereto, and all land lying in the bed of any street, road, or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof, and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim, and demand whatsoever, both at law and in equity, of Borrower of, in, and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;  .

(d)  All machinery, equipment, fixtures, appliances, and personal property of every kind and nature whatsoever now or hereafter owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located in, on, or about the Land and the Improvements, or the appurtenances thereof, or used or intended to be used with or in connection with the present or future operation, occupancy, or enjoyment of the Land and the Improvements (including, without limitation, appliances, machinery, equipment, signs, artwork, office furnishings and equipment, guest room furnishings, and specialized equipment for kitchens, laundries, bars, restaurant, public rooms, health and recreational facilities, linens, dishware, all partitions, screens, awnings, shades, blinds, floor coverings, hall and lobby equipment, heating, lighting, plumbing, ventilating, refrigerating, incinerating, elevators, escalators, air conditioning and communication plants or systems with appurtenant fixtures, vacuum cleaning systems, call or beeper systems, security systems, sprinkler systems and other fire prevention and extinguishing apparatus and materials; reservation system computer and related equipment; all equipment, manual, mechanical or motorized, for the construction, maintenance, repair and cleaning of, parking areas, walks, underground ways, truck ways, driveways, common areas, roadways, highways and streets), and all building equipment, materials, and supplies of any nature whatsoever now or hereafter located in, on, or about the Land and the Improvements, or the appurtenances thereof, and whether in storage or otherwise, or used or intended to be used with or in connection with the present or future operation, occupancy, or enjoyment of the Land and the Improvements (hereinafter collectively referred to as the **"Equipment"**), including the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Borrower in and to any of the Equipment which may be subject to any security interests, as defined in the UCC, as adopted and enacted by the State or States where any of the Property is located (the "UCC") superior in priority to the lien of this Security Deed.  In connection with Equipment which is leased to Borrower or which is subject to a lien or security interest which is superior to the lien of this Security Deed, this Security Deed shall also cover all right, title and interest of Borrower in and to all deposits, and the benefit of all payments now or hereafter made with respect to such Equipment;

(e)  All leases, usufructs, subleases, subtenancies, licenses, occupancy agreements, and concessions relating to the use and enjoyment of all or any part of the Land or the Improvements heretofore or hereafter entered into whether before or after the filing by or against Borrower of any petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., as the same might be amended from time to time (the "**Leases**"), and any and all guaranties and other agreements relating to or made in connection with any of the Leases, and all right, title, and interest of Borrower, its successors and assigns therein and thereunder, to secure the performance by the lessees, sublessees, tenants, subtenants, permittees, licensees, and other obligees of their obligations thereunder and all rents, additional rents, revenues, issues, and profits (including oil and gas or other mineral royalties and bonuses) from the Land and the Improvements, whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (the "**Rents**"), and all proceeds from the sale or other disposition of the Leases and any property interests thereunder and the right to receive and apply the Rents to the payment of the Secured Obligations, and all of Borrower's claims and rights to damages and any other remedies in connection with or arising from the rejection of any Lease by a Lessee or any trustee, custodian, or receiver pursuant to the Bankruptcy Code in the event that there shall be filed by or against a Lessee any petition, action. or proceeding under the Bankruptcy Code or under any other similar federal or state law now or hereafter in effect;

(f)  All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Land, the Improvements, the Leases or any of the other Property into cash or liquidated claims, including proceeds of all present and future fire, hazard, or casualty insurance policies and all condemnation awards or payments now or hereafter to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and Lender hereby acknowledges and covenants that Lender shall have no right or interest in such proceeds and awards, and all causes of action and their proceeds for any damage or injury to the Land, Improvements, or any of the other Property or any part of them, or breach of warranty in connection with the construction of the Improvements, including causes of action arising in tort, contract, fraud, or concealment of a material fact;

(g)  All rights to the payment of money, accounts, accounts receivable, reserves, deferred payments, refunds, cost savings, payments and deposits, whether now or hereafter to be received from third parties (including all earnest money deposits) or deposited by Borrower with Lender or third parties (including all utility deposits, accounts for the deposit, collection, and/or disbursement of Rents, and all reserve accounts provided for under any documentation entered into or delivered by Borrower in connection with the Loan), chattel paper, instruments, documents, notes, drafts and letters of credit, which arise from or relate to construction on the Land, to any business now or hereafter to be conducted on the Land, or to the Land and the Improvements generally;

Deed Book 46519 Pg 549

(h)     All franchises, trade names, trademarks, symbols, goodwill, service marks, trade styles, books, records, development and use rights, architectural and engineering plans, specifications and drawings, and as-built drawings, contracts, licenses, approvals, applications, consents, subcontracts, service contracts, management contracts, permits, and other agreements of any nature whatsoever now or hereafter obtained or entered into by Borrower, or any managing agent of the Property on behalf of Borrower, with respect to the use, occupation, development, construction, management, and/or operation of the Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Property or any part thereof, including, without limitation, (i) all rights of Borrower to receive moneys due and to become due to it under or in connection with any of the foregoing, (ii) all rights of Borrower to damages arising out of or for a breach or default in respect thereof, and (iii) all rights of Borrower to perform and to exercise all remedies thereunder;

(i)     All rights that Borrower now has or may hereafter acquire, to be indemnified and/or held harmless from any liability, loss, damage, costs or expense (including, without limitation, attorneys' fees and disbursements) relating to the Property or any part thereof;

(j)     All books and records pertaining to any and all of the property described above, including computer-readable memory and any computer hardware or software owned by Borrower necessary to access and process such memory; and

(k)     All proceeds of, additions and accretions to, substitutions and replacements for, and any changes in any of the property described above;

TO HAVE AND HOLD the Property to the only proper use, benefit and behoof of Lender, forever, in fee simple. This instrument is a deed passing legal title pursuant to the laws of the State of Georgia governing deeds to secure debt and a security agreement granting a security interest pursuant to the Uniform Commercial Code of the State of Georgia, and it is not a mortgage.

Borrower warrants and represents that Borrower is lawfully seized of the Property, in fee simple, absolute, that Borrower has the legal right to convey and encumber the same, and that the Property is free and clear of all liens and encumbrances whatsoever except as set forth on **Exhibit B** hereto, if any, and otherwise without exception. Borrower further warrants and will forever defend all and singular the Property and title thereto to Lender and Lender's successors and assigns, against the lawful claims of all persons whomsoever. Borrower shall not acquire any portion of the Property subject to any security interest, conditional sales contract, title retention arrangement, or other charge or lien taking precedence over the security interest and lien of this Security Deed.

PROVIDED ALWAYS that if all Secured Obligations are timely paid and performed each and every representation, warranty, agreement, and condition of this Security Deed and other Loan Documents abided by, this Security Deed and the estate hereby created shall cease and be null, void, and canceled of record.

3.     **Borrower Covenants**

Ln#: 9542002260-00002

Deed Book 46519 Pg 550

(a)    Junior Encumbrances: Without Lender's prior written consent, Borrower shall not create nor permit to exist any liens or encumbrances on the Property which are junior and inferior in terms of priority to this Security Deed nor execute any document that impairs or otherwise affects the priority of any future advances secured by this Security Deed.

(b)    Payments by Borrower: Borrower shall pay, when due and payable: (i) the Secured Obligations in accordance with the terms and conditions of the instruments evidencing the same; (ii) all taxes, all assessments, general or special, and all other charges levied on or assessed or placed or made against the Property, this Security Deed, the Secured Obligations or any interest of Lender in the Property, this Security Deed or the Secured Obligations; (iii) premiums on policies of fire and casualty insurance covering the Property, as required by this Security Deed; (iv) premiums on all life insurance policies now or hereafter pledged as collateral for the Secured Obligations or any part thereof; (v) premiums for all liability, rental, mortgage and flood insurance policies required by this Security Deed or now or hereafter required by Lender in connection with the Property or the Secured Obligations or any part of either; and (vi) all ground rents, lease rentals and other payments respecting the Property payable by Borrower. Borrower shall promptly deliver to Lender, upon request by Lender, receipts showing payment in full of all the foregoing items; provided, however, that Lender shall not require a receipt showing payment in full of the Secured Obligations. In the event any state, federal, municipal or other governmental law, order, rule or regulation becomes effective subsequent to the date hereof and in any manner changes or modifies the laws in force on the date hereof governing the taxation of the Secured Obligations or the manner of collecting the taxes thereon so as to adversely affect Lender by requiring that a payment or payments be made or other action be taken to protect Lender's interest under this Security Deed or the Secured Obligations, Borrower shall promptly pay any amounts required on or before the date the same are due or take any other action required on or before the date any such action must be taken.

Ln#: 9542002260-00002

Deed Book 46519 Pg 551

(c)     Hazard and Liability Insurance: Borrower shall keep the Property insured against loss·or damage by fire and such other casualties and risks as the Lender may require from time to time, with such companies, in such amounts and under such forms of policies as Lender may approve. Such policies shall insure Lender's interest in the Property, name Lender as an insured party thereunder, provide that losses thereunder shall be payable to Lender pursuant to such forms of loss payable clauses as Lender may approve and provide that no cancellation or reduction in coverage shall be effective unless the insurer first gives Lender thirty (30) days prior written notice. Irrespective of the insurance required and approved by Lender, Borrower shall assign and deliver to Lender, as additional collateral for the payment of the Secured Obligations, all policies of insurance which insure against loss or damage to the Property, and Borrower hereby grants to Lender a security interest in the proceeds from any and all such policies. Borrower shall also procure and maintain public liability insurance coverage with such companies, in such amounts and under such forms of policies as Lender may approve, naming Lender as an additional insured thereunder and providing that no cancellation or reduction in coverage thereunder shall be effective unless the insurer first gives Lender thirty (30) days prior written notice. Forthwith upon the issuance of all such policies, Borrower shall deliver the same to Lender together with evidence satisfactory to Lender that the premiums therefor have been paid. Within fifteen (15) days prior to the expiration date of each such policy, Borrower shall deliver to Lender a renewal policy together with evidence satisfactory to Lender that the premium therefor has been paid. In the event of a foreclosure and sale by Lender of the Property, the purchaser of the Property shall succeed to all rights of Borrower in and to such policies, including the right to the refund of unearned premiums and to dividends thereunder, and Lender may, at Lender's election, assign and deliver the policies to such purchaser without any warranty or representation, express or implied, and without recourse. In the event of damage to or destruction of the Property or any part thereof, Lender may adjust, settle or compromise claims under such policies, and the proceeds therefrom shall be paid to Lender. Lender, at Lender's option and in Lender's sole discretion, may either (i) apply the proceeds or any part thereof to the Secured Obligations or (ii) require Borrower to repair, replace or reconstruct the Property or any part thereof and disburse the proceeds to Borrower to be applied against the costs and expenses thereof as incurred or paid by Borrower.

Ln#: 9542002260-00002

(d)   Flood Insurance: Borrower represents and has certified to Lender that to the best of its actual knowledge no part of the Property lies within a "special flood hazard area" as defined and specified by the United States Department of Housing and Urban Development pursuant to the Flood Disaster Protection Act of 1973. In the event Lender determines that the rules or regulations of the Federal Reserve Board, the Comptroller of the Currency or any other governing agency licensing or regulating the operations of Lender require that flood insurance coverage be obtained for the Property or any part thereof in order for Lender to comply with such rules or regulations or with the Flood Disaster Protection Act of 1973 as then in effect, then Borrower, upon receiving written notice from Lender of such determination: (i) shall promptly purchase and pay the premiums for such flood insurance policies as Lender deems required by such agency or agencies so that Lender shall be deemed in compliance with the rules and regulations of such agency or agencies and with the Flood Disaster Protection Act of 1973 as then in effect; and (ii) shall deliver such policies to Lender together with evidence satisfactory to Lender that the premiums therefor have been paid. Such policies of flood insurance shall be in a form satisfactory to Lender, shall name Lender as an insured thereunder, shall provide that losses thereunder be payable to Lender pursuant to such forms of loss payable clause as Lender may approve, shall be for an amount at least equal to the Secured Obligations or the maximum limit of coverage made available with respect to the Property under the National Flood Insurance Act of 1968, as amended, whichever is less, and shall be noncancellable as to Lender except upon thirty (30) days prior written notice given by the insurer to Lender. Within ten (10) days prior to the expiration date of each such flood insurance policy, Borrower shall deliver to Lender a renewal policy or endorsement together with evidence satisfactory to Lender that the premium therefor has been paid.

(e)   Escrow Deposits: Upon demand of Lender, Borrower shall add to each payment required under the Note or other loan documents the amount estimated by Lender to be sufficient to enable Borrower to pay as they become do all taxes, charges, assessments, and insurance premiums which Borrower is required to pay. Further, any deficiency occasions by an insufficiency of such additional payments shall be deposited by Borrower with Lender upon demand.

(f)   Lender's Acts on Behalf of Borrower: In the event Borrower shall either fail or refuse to pay or cause to be paid, as the same shall become due and payable, any item (including all items specified at Paragraph (2) immediately above) which Borrower is required to pay hereunder or which Borrower may pay to cure an event of default hereunder, or in the event Borrower shall either fail or refuse to do or perform any act which Borrower is obligated to do or perform hereunder or which Borrower may do or perform to cure an event of default hereunder, then Lender, at Lender's option, may make such payment or do or perform such act on behalf of Borrower. All such payments made by Lender and all costs and expenses incurred by Lender in doing or performing all such acts shall be and shall become part of the Secured Obligations secured hereby and shall bear interest at the highest rate per annum then being charged with respect to any part of the Secured Obligations secured hereby from the date paid or incurred by Lender, and such interest thereon shall also be part of the Secured Obligations secured hereby.

(g)    <u>Further Assurances; After Acquired Property</u>. At any time, and from time to time, upon request by Lender, Borrower will make, execute and deliver or cause to be made, executed and delivered, to Lender, any and all other further instruments, certificates, and other documents as may, in the reasonable opinion of Lender, be necessary or desirable to (i) perfect and protect the lien and security interest created or purported to be created hereby, (ii) enable Lender to exercise and enforce any and all rights and remedies hereunder in respect of the Property, or (iii) effect otherwise the purposes of this Security Deed, including, without limitation, (A) executing and filing such financing or continuation statements, or amendments thereto, as may be necessary or desirable or that Lender might request to perfect and preserve the security interest created by this Security Deed as a first and prior security interest upon and security title in and to all of the Property, whether now owned or hereafter acquired by Borrower, (B) if certificates of title are now or hereafter issued or outstanding with respect to any of the Property, by immediately causing the interest of Lender to be properly noted thereon at Borrower's expense, and (C) furnishing to Lender from time to time statements and schedules further identifying and describing the Property and such other reports in connection with the Property as Lender might request, all in reasonable detail. Upon any failure by Borrower so to do, Lender may make, execute, and record any and all such instruments, certificates, and documents for and in the name of Borrower, and Borrower hereby irrevocably appoints Lender the agent and attorney in fact of Borrower so to do, which power of attorney is coupled with an interest and irrevocable. The lien and security interest hereof shall attach automatically without any further act or deed required of Borrower or Lender to all after-acquired property of the kind described herein attached to or used in connection with the operation of the Property or any part thereof.

(h)    <u>Replacement Documents</u>. Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, Borrower will issue, identified as being in lieu thereof, a replacement note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

(i)    <u>Indemnification of Expenses</u>. Without limitation upon any indemnification obligations set forth herein or in any other Loan Document, Borrower will pay, reimburse, and indemnify Lender for all reasonable attorney's fees, costs, and expenses incurred by Lender in any suit, action, trial, appeal, bankruptcy or other legal proceeding or dispute of any kind in which Lender is made a party or appears as party plaintiff or defendant, affecting the Secured Obligations, this Security Deed or the interests created herein, or the Property, or any appeal thereof, including, but not limited to, any foreclosure action, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Borrower, any Lessee of the Property (or any part thereof), or any guarantor of any of the Secured Obligations, and any such amounts paid by Lender shall be added to the Secured Obligations and shall be secured by this Security Deed. Borrower will indemnify and hold Lender harmless from and against all claims, damages, and expenses, including reasonable attorney's fees and court costs, resulting from any action by a third party against Lender relating to this Security Deed or the interests created herein, or the Property, including, but not limited to, any action or proceeding claiming loss, damage or injury to person or property, or any action or proceeding claiming a violation of any national, state or local law, rule or regulation, provided Borrower shall not be required to indemnify Lender for matters directly and solely caused by the willful misconduct or gross negligence of Lender.

Ln#: 9542002260-00002

(j)  <u>Further Assurances</u>: Borrower shall, at any time and from time to time upon request by Lender, make, execute and deliver, or cause to be made, executed and delivered, any and all other and further instruments, documents, certificates, agreements, letters, representations and other writings which may be necessary or desirable, in the opinion of Lender, in order to effectuate, complete, correct, perfect or continue and preserve the obligations of Borrower under the Secured Obligations and the lien and security interest of Lender hereunder. Borrower shall upon request by Lender certify in writing to Lender, or to any proposed assignee of this Security Deed, the amount of principal and interest then owing on the Secured Obligations and whether or not any set-offs or defenses exist against all or any part of the Secured Obligations;

(k)  <u>Rents and Leases</u>: Borrower hereby transfers, assigns and conveys unto Lender all of Borrower's right, title and interest in and to all leases or undertakings to lease now or hereafter existing or made, and all other agreements for use or occupancy, with respect to the Property or any part thereof, and grants to Lender a security interest in all rents, issues, income, revenues, profits, accounts and contract rights due or to become due thereunder or otherwise deriving from the use and occupancy of the Property. Borrower shall faithfully perform the covenants of Borrower as lessor under all present and future leases of all or any portion of the Property and shall not do, neglect to do, or permit to be done, anything which may cause the termination of such leases, or any of them, or which may diminish or impair their value or the rents provided for therein or the interest of Borrower or Lender therein or thereunder. Borrower, without first obtaining the written consent of Lender, shall not further assign the rents, issues, income, revenues, profits, accounts or contract rights from the Property or any part thereof, shall not consent to the cancellation or surrender of any lease of the Property or any part thereof now existing or hereafter to be made, shall not modify any such lease so as to shorten the unexpired term thereof or so as to decrease the amount of the rent payable thereunder and shall not collect rents from the Property or any part thereof for more than one month in advance. Borrower shall procure and deliver to Lender upon request estoppel letters or certificates from each lessee, tenant, occupant in possession and other user of the Property or any part thereof, as required by and in form and substance satisfactory to Lender, and shall deliver to Lender a recordable assignment of all of Borrower's interest in all leases now or hereafter existing or made with respect to the Property or any part thereof, which assignment shall be in form and substance satisfactory to Lender, together with proof of due service of a copy of such assignment on each lessee, tenant, occupant in possession or other user of the Property or any part thereof.

(l)  <u>Maintenance and Repair</u>: Borrower shall maintain the Property in good condition and repair, shall not commit or suffer any waste to the Property, and shall comply with, or cause to be complied with, all statutes, ordinances, rules, regulations and directives of any governmental authority relating to the Property or any part thereof or the use or occupancy of the Property or any part thereof. No part of the Property, including but not limited to any buildings, structures, parking lots, driveways or other improvements now or hereafter constructed on the land which is part of the Property, shall be removed, demolished or materially altered without the prior written consent of Lender. If at any time during the continuance of the Secured Obligations any addition, alteration, change, repair, reconstruction or other work on the Property of any nature, structural or otherwise, becomes necessary or desirable because of damage to or destruction of the Property or any part thereof, the entire expense thereof, regardless of when the same shall be incurred or become due, shall be the sole obligation and responsibility of Borrower, and Borrower shall pay the entire expense thereof promptly when due.

Ln#: 9542002260-00002

Deed Book 46519 Pg 554

(m) <u>Condemnation</u>: To the extent of the Secured Obligations, Borrower grants to Lender a security interest in any and all payments, awards, judgments or settlements, including interest thereon, to which Borrower may be or may become entitled or which Lender may receive by reason of injury or damage to, or loss of, the Property or any part thereof as a result of the exercise of the right of eminent domain. Notwithstanding any injury or damage to, or loss of, the Property or any part thereof as a result of the exercise of the right of eminent domain, Borrower shall continue to pay the Secured Obligations. All sums paid or payable to Borrower by reason of any injury or damage to, or loss of, the Property or any part thereof as a result of the exercise of the right of eminent domain shall be delivered to Lender and Lender, at Lender's option and at Lender's sole discretion, may either (I) apply the sum or any part thereof to the Secured Obligations or (ii) require Borrower to repair, replace or reconstruct the Property or any part thereof and disburse such sums to Borrower to be applied against the costs and expenses thereof as incurred or paid by Borrower.

(n) <u>Inspection</u>: Borrower shall permit any person designated by Lender to visit and inspect the Property, to examine the books of account and other records of Borrower with respect to the Property, and to discuss the affairs, finances and accounts of Borrower with and to be advised as to the same by Borrower or a knowledgeable and duly authorized representative of Borrower, all at such reasonable times and intervals as Lender may desire.

(o) <u>Restriction on Transfer</u>: Borrower shall not Transfer the Property or any interest therein or permit or suffer and Transfer of any interest in the Borrower itself. A "Transfer" with respect to the Property (or any portion thereof) shall include a sale, conveyance, transfer or encumbrance, directly or indirectly, either voluntarily, involuntarily or by operation of law, of the title to or possession of all or part of the Property. A "Transfer" shall further include (i) any sale, conveyance, assignment or other transfer of, or the grant of a security interest in, any share of stock of Borrower if Borrower is a corporation; (ii) any sale, conveyance, assignment or other transfer of, or the grant of a security interest in, any general partnership interest in Borrower if Borrower is a partnership; (iii) any sale, conveyance, assignment or other transfer of, or the grant of a security interest in, any member's interest in Borrower if Borrower is a limited liability company; or (iv) any merger or recapitalization of the Borrower. Notwithstanding the foregoing, a prohibited "Transfer" shall not include (i) aggregate changes in the beneficial ownership of Borrower of less than 20% or (ii) such change to which Lender has given written consent or (iii) change of the management or Manager of Borrower so long as Lawrence T. Maxwell or Lawrence W. Maxwell directly or indirectly controls such management or Manager or (iv) the lease of all or a portion of the Property in consideration of a fair rental value that is prepaid not more than one month in advance or to which Lender has given its express written consent.

Deed Book 46519 Pg 555

(p)   Environmental Condition of Property and Indemnity: Borrower warrants and represents to Lender that the Property and Borrower, and any occupants of the Property, are in compliance with and shall continue to be in compliance with all applicable federal, state and local laws and regulations intended to protect the environment and public health and safety as the same may be amended from time to time ("**Environmental Laws**") and no hazardous materials (including asbestos or lead paint in any form) are located on, in or under the Property or emanate from the Property. Further, Borrower represents to Lender that no portion of the Property is a protected wetland. The foregoing representations are made to the best knowledge of Borrower but the indemnities set forth herein and in any other loan document are neither conditioned upon nor limited by such knowledge or lack of it. Borrower agrees to notify Lender immediately upon receipt of any citations, warnings, orders, notices, consent agreements, process or claims alleging or relating to violations of any Environmental Laws or to the environmental condition of the Property. Borrower shall indemnify, hold harmless, and defend Lender from and against any and all damages, penalties, fines, claims, suits, liabilities, costs, judgments and expenses, including attorneys', consultants' or experts' fees of every kind and nature incurred, suffered by or asserted against Lender as a direct or indirect result of: (I) representations made by Borrower being or becoming untrue in any material respect; or (ii) Borrower's violation of or failure to meet the requirements of any Environmental Laws; or (iii) hazardous materials which, while the Property is subject to this Security Deed, exist on the Property. Lender shall have the right to arrange for or conduct environmental inspections of the Property from time to time (including the taking of soil, water, air or material samples). The cost of such inspections made after default or which are required by laws or regulations applicable to Lender shall be at the expense of Borrower. Borrower's obligations under this Section shall continue, survive and remain in full force and effect notwithstanding foreclosure, satisfaction of this Security Deed or full satisfaction of the Secured Obligations.

4.   **Events of Default**

Any one or more of the following shall constitute an Event of Default hereunder by Borrower:

(a)   Payment of Secured Obligations: Failure of Borrower to pay the Secured Obligations or any part thereof when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment or at a date fixed by reason of acceleration of the due date thereof or otherwise;

(b)   Other Payments and Terms: Failure of Borrower to make any payment (other than on the Secured Obligations) required hereunder or to observe, perform, or comply with any of the covenants, terms or conditions set forth herein, or in any other instrument, document, agreement, letter or other writing heretofore, concurrently herewith or in the future executed by Borrower in favor of Lender in connection with any transaction which resulted in the Secured Obligations or any part thereof;

(c)   False Statements: if any certificate, representation, warranty, statement or other writing made herein or heretofore, now or hereafter furnished to Lender by or on behalf of Borrower in connection with any transaction which resulted in the Secured Obligations or any part thereof be false, untrue, incomplete or misleading in any respect as of the date made;

Deed Book 46519 Pg 556

(d) Waste: If the Property or any part thereof should be subject to actual or threatened waste, or any part thereof be removed, demolished, or materially damaged or altered as a result of which the value of the Property shall be diminished;

(e) Seizure or Levy: If the Property or any part thereof be seized or levied upon under legal process or a receiver be appointed for the Property or any part thereof or for Borrower;

(f) Liens: If any Federal tax lien or any claim of lien for labor, material or architectural or engineering services furnished or alleged to have been furnished in the improvement of or with respect to the Property is filed of record against Borrower or the Property and is not removed from record by payment or bond within thirty (30) days from the date of such filing;

(g) Priority Claim: If any person shall assert any claim of priority over this Security Deed in any legal or equitable proceeding, and such claim shall not have been dismissed with prejudice within sixty (60) days after the filing thereof;

(h) Insolvency or Bankruptcy: If Borrower shall become insolvent or make an assignment for benefit of creditors; or if Borrower should file a petition for bankruptcy or an arrangement pursuant to the Federal Bankruptcy Act or any similar statute, or if Borrower be adjudicated a bankrupt or an insolvent; or if any proceeding is instituted against or on behalf of Borrower alleging that Borrower is insolvent or unable to pay Borrower's debts as they mature, or if a petition for the bankruptcy or arrangement of Borrower, pursuant to the Federal Bankruptcy Act or any similar statute is filed;

(i) Receiver: If there should be appointed a receiver, liquidator or trustee for Borrower or for any property of Borrower;

(j) Judgments: If any judgment is rendered against Borrower which is not paid in full and satisfied or is not appealed from within the time allowed for appeals and paid in full and satisfied when it becomes final;

(k) Liquidation or Dissolution: Should Borrower, if a corporation or other artificial legal entity, be liquidated or dissolved, or proceedings commenced for the express purpose thereof, or its articles of organization expire or be revoked, or, if Borrower is a partnership or business association, the Borrower dissolves or any portion of its property is subject to proceedings seeking, among other things, partition.

(l) Guarantors: If any Guarantor shall die, in the event such Guarantor is a natural person, or upon the commencement of any action seeking the dissolution or involuntary liquidation of the assets of a Guarantor that is an artificial entity unless, within 45 days after such event(s), Borrower has provided to Lender a replacement Guarantor reasonably acceptable to Lender.

5. **Lender's Remedies and Power of Sale**

Upon the occurrence of an event of default, at Lender's option and election without notice to Borrower, Lender may declare all or any portion of the Secured Obligations to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment, demand, protest or notice of any kind, all of which am expressly waived by Borrower, and Lender, at Lender's option and election, may do any one or more of the following:

Ln#: 9542002260-00002

(a) Entry and Possession: Lender may enter upon the Property or any part thereof and take possession thereof, excluding therefrom Borrower and all agents, employees and representatives of Borrower; employ a manager of the Property or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Property or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals, and replacements; keep the Property insured; or carry out or enter into agreements of any kind with respect to the Property.

(b) Collection of Rents: Lender may collect and receive all rents, issues, income, revenues, profits, accounts and contract rights from the Property and apply the same to the Secured Obligations, after deducting therefrom all costs, charges, and expenses of taking, holding, managing, and operating the Property, including the fees and expenses of Lender's attorneys, and agents.

(c) Payments: Lender may pay any sum or sums deemed necessary or appropriate by Lender to protect the Property or any part thereof or Lender's interest therein.

(d) Other Remedies: Lender may exercise all rights and remedies contained in any other instrument, document, agreement or other writing heretofore, concurrently herewith or in the future executed by Borrower in favor of Lender in connection with the transactions resulting in the Secured Obligations or any part thereof.

(e) Appointment of Receiver: Lender, upon application to a court of competent jurisdiction, shall be entitled, without regard to the adequacy of any security for the Secured Obligations or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect the rents, profits, issues and revenues thereof. Borrower will pay to Lender upon demand all expenses, including, without limitation, all receivers' fees, reasonable attorneys' fees actually incurred at standard billable rates, and agent's compensation, incurred pursuant to the provisions of this Section, and all such expenses shall constitute Secured Obligations.

(f) Suits to Protect Property: Lender shall have power (i) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or any violation of this Security Deed, (ii) to preserve or protect its interest in the Property and in the Rents, and (iii) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule, or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule, or order would impair the security hereunder or be prejudicial to the interest of Lender.

(g) U.C.C. Remedies: With respect to the personal property in which a security interest is herein granted, Lender may exercise any or all of the rights accruing to a secured party under this Security Deed, the Uniform Commercial Code (§§109A-9-101 et. seq. of the Ga. Code Annotated) and any other applicable law. Borrower shall, if Lender requests, assemble all such personal property and make it available to Lender at a place or places to be designated by Lender, which shall be reasonably convenient to Borrower and Lender. Any notice required to be given by Lender of a public or private sale, lease or other disposition of the personal property or any other intended action by Lender may be personally delivered to Borrower or may be deposited in the United States mail with postage prepaid duly addressed to Borrower at the

address of Borrower last known to Lender at least five (5) business days prior to such proposed action, and shall constitute reasonable and fair notice to Borrower of any such action.

(h) **Power of Sale:** Lender may sell the Property, or any part thereof or any interest therein separately, at Lender's discretion, with or without taking possession thereof, at public sale before the courthouse door of the county in which the Property, or a part thereof, is located, to the highest bidder for cash, after first giving notice of the time, place and terms of such sale by advertisement published once a week for four weeks (without regard for the number of days) in a newspaper in which advertisements of sheriff's sales are published in such county. The advertisement so published shall be notice to Borrower, and Borrower hereby waives all other notices. Lender may bid and purchase at any such sale, and Lender may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Property, or the part thereof or interest therein sold. Lender's conveyance may contain recitals as to the occurrence of any event of default under this Security Deed, which recitals shall be presumptive evidence that all preliminary acts prerequisite to such sale and conveyance were in all things duly complied with. The recitals made by Lender shall be binding and conclusive upon Borrower, and the sale and conveyance made by Lender shall divest Borrower of all right, title, interest and equity that Borrower may have had in, to and under the Property, or the part thereof or interest therein sold, and shall vest the same in the purchaser or purchasers at such sale. Lender may hold one or more sales hereunder until the Secured Obligations has been satisfied in full. Borrower hereby constitutes and appoints Lender as Borrower's agent and attorney-in-fact to make such sale, to execute and deliver such conveyance and to make such recitals, and Borrower hereby ratifies and confirms all of the acts and doings of Lender as Borrower's agent and attorney-in-fact hereunder. Lender's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by insolvency, incompetency, death or otherwise, and shall not be exhausted until the Secured Obligations has been satisfied in full. The proceeds of each sale by Lender hereunder shall be applied first to the costs and expenses of the sale and of all proceedings in connection therewith, including attorney's fees if applicable, then to the payment of the Secured Obligations, and the remainder, if any, shall be paid to Borrower. If the proceeds of any sale are not sufficient to pay the Secured Obligations in full, Lender shall determine, at Lender's option and in Lender's discretion, the portions of the Secured Obligations to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Borrower covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Borrower shall be and become a tenant holding over and shall deliver possession of the Property, or the part thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over.

All rights and remedies set forth above are cumulative and in addition to any right or remedy provided for by statute, or now or hereafter existing at law or in equity, including without limitation the right of Lender to collect or enforce the Secured Obligations with or without taking any action with respect to the Property. Lender may, at Lender's election and at Lender's discretion, exercise each and every such right and remedy concurrently or separately.

6. <u>Additional Provisions</u>

Borrower further covenants and agrees:

Ln#: 9542002260-00002

(a)   Applicable Law: This Security Deed shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of Georgia.

(b)   Forbearance and Preservation of Rights and Remedies. Lender shall not be deemed to waive any of Lender's rights or remedies hereunder unless such waiver be in writing and signed by or on behalf of Lender. No delay, omission or forbearance by Lender in exercising any of Lender's rights or remedies shall operate as a waiver of such rights or remedies, and a waiver in writing on one occasion shall not be construed as a consent to or a waiver of any right or any remedy on any future occasion. No waiver of any Event of Default hereunder shall extend to or shall affect any subsequent or any other then existing Event of Default or shall impair any rights, powers, or remedies consequent thereon. If Lender (i) grants forbearance or an extension of time for the payment of any of the Secured Obligations, (ii) takes other or additional security for the payment of the Secured Obligations, (iii) waives or does not exercise any right granted in the Note, this Security Deed, or any of the other Loan Documents, (iv) releases any part of the Property from the lien and interest of this Security Deed or otherwise changes any of the terms of the Note, this Security Deed, or any of the other Loan Documents, (v) consents to the filing of any map, plat, or replat pertaining to the Property, (vi) consents to the granting of any easement or license affecting the Property, or (vii) makes or consents to any agreement subordinating the lien and interest of this Security Deed, then any such act or omission shall not release, discharge, modify, change, or affect the original liability under the Note, this Security Deed, or otherwise of Borrower or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety, or guarantor, nor shall any such act or omission preclude Lender from exercising any right, power, or privilege herein granted or intended to be granted in the event of any other Event of Default then made or of any subsequent Event of Default, nor, except as otherwise expressly provided in an instrument or instruments executed by Lender, shall the lien and security interest of this Security Deed be altered thereby. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Lender, at its option, without notice to any person or entity, hereby is authorized and empowered to deal with any such vendee or transferee with reference to the Property or the Secured Obligations, or with reference to any of the terms or conditions hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any of the liabilities or under-takings hereunder.

(c)   Anti-Marshaling Provision. Lender may grant releases at any time and from time to time of all or any portion of the Property (whether or not such releases are required by agreement among the parties) agreeable to Lender without notice to or the consent, approval or agreement of other parties and interests, including junior lienholders and purchasers who may be subject to the lien of this Deed to Secure Debt, and such releases shall not impair in any manner the validity or the priority of this Deed to Secured Debt on that portion of the Property remaining subject to this Deed to Secured Debt nor release Borrower from personal liability for the Secured Obligations. Notwithstanding the existence of any other security interests in the Property held by the Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies available to the Lender, and Lender shall further have the right to determine the order in which any or all of the portions of the Secured Obligations are satisfied from the proceeds realized upon the exercise of any remedy it has. Borrower, or any party who consents to this, or any party who has actual or constructive notice hereof, including but not limited to any junior lienholder, guarantor or surety, hereby waives any and all rights to

Deed Book 46519 Pg 560

require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

(d)     Time: Time is and shall be of the essence of this Security Deed and the covenants and agreements by Borrower.

(e)     Captions: Any captions or heading preceding the text of separate sections, paragraphs and sub-paragraphs hereof are solely for reference purposes and shall not affect the meaning, construction, interpretation or effect of the text.

(f)     Notices: All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given to Borrower if personally delivered or if mailed in the United States mail, by certified mail with a return receipt requested and with postage prepaid, to Borrower's last address known to Lender.

(g)     Severability: In the event that any of the terms, provisions or covenants of this Security Deed are held to be partially or wholly invalid or unenforceable for any reason whatsoever, such holding shall not affect, alter, modify or impair in any manner whatsoever any of the other terms, provisions or covenants hereof not held to be partially or wholly invalid or unenforceable.

(h)     Definition of Parties. The word **"Borrower"** as used herein shall include the plural should more than one Borrower execute this document; the masculine and feminine gender, regardless of the sex of Borrower or any of them; individuals, partnerships, joint ventures, corporations and other legal entities should such an entity execute this document; and the heirs, legal representatives, successors and assigns of Borrower. If more than one party shall execute this Security Deed, the word "Borrower" shall mean all parties signing, and each of them, and each and every agreement and obligation of Borrower shall be and mean the joint and several undertaking of each of them. The word **"Lender"** as used herein shall include the transferees, successors, legal representatives and assigns of Lender, and all rights of Lender hereunder shall inure to the benefit of its transferees, successors, legal representatives and assigns.

7.      <u>Waiver of Constitutional Notice and Hearing</u>

GRANTOR EXPRESSLY WAIVES the following: (1) *Notice and Hearing*: Any right Borrower may have under the Constitution of the State of Georgia or the Constitution of the United States of America to notice or to a judicial hearing prior to the exercise of any right or remedy provided to Lender by this Security Deed, and Borrower waives Borrower's rights, if any, to set aside or invalidate any sale under power duly consummated in accordance with the provisions of this Security Deed on the ground (if such be the case) that the sale was consummated without prior notice or judicial hearing or both; and (2) all homestead exemption rights, if any, which Borrower or Borrower's family may have pursuant to the Constitution and laws of the United States, the State of Georgia or any other State of the United States, in and to the Property as against the collection of the Secured Obligations, or any part thereof. All waivers by Borrower in this paragraph have been made voluntarily, intelligently and knowingly by Borrower, after Borrower has been afforded an opportunity to be informed by counsel of Borrower's choice as to possible alternative rights. Borrower's execution of this Security Deed shall be conclusive evidence of the making of such waivers and that such waivers have been voluntarily, intelligently and knowingly made.

Ln#: 9542002260-00002

Borrower to Initial: _____ acknowledging the foregoing is read and understood.

8.   WAIVER OF TRIAL BY JURY. BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TOWARD OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOANS EVIDENCED BY THE NOTES, THE SECURITY DEED OR THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF THE LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

Borrower to Initial: _____ acknowledging the foregoing is read and understood.

IN WITNESS WHEREOF, this Security Deed has been executed and sealed by Borrower in the State of Georgia on the day and year first above written.

Borrower:

Odyssey (VI) Commercial DP III, LLC
a Florida limited liability company
by: Odyssey Management VI, LLC, a Florida limited
liability company, its Manager

By: _____
Jim D. Lee, Vice-President

_Patricia Hendler_
Witness

_Willie J Oby_
Witness

ACKNOWLEDGMENT

STATE OF FLORIDA
COUNTY OF POLK

The foregoing instrument was acknowledged before me this _17_ day of March 2008, by Jim D. Lee who is the Vice-President of Odyssey Management VI, LLC, a Florida limited liability company, who is the Manager of Odyssey (VI) Commercial DP III, LLC, a Florida limited liability company and who is personally known to me _____ or produced the following identification

_Deranda R Evans_
Notary Public

NOTARY SEAL

DERANDA R. EVANS
Notary Public - State of Florida
My Commission Expires Nov 27, 2009
Commission # DD 672646
Bonded Through National Notary Assn.

Ln#: 9542002260-00002

Deed Book 46519 Pg 562

## EXHIBIT A

### LEGAL DESCRIPTION

All that tract or parcel of land lying and being in Land Lot 197, 13th District, Fulton County, Georgia and being more particularly described as follows:

BEGINNING at a point located at the northeasterly mitered corner of the easterly right of way of Georgia Highway 279 a.k.a. Old National Highway (having a variable right of way) and the southerly right of way of Georgia Highway 138 a.k.a. Jonesboro Road (having a variable right of way); thence leaving said point and running with the said right of way of Georgia Highway 138 South 89 degrees 01 minutes 25 seconds East, 277.74 feet to a point; thence, North 82 degrees 55 minutes 33 seconds East, 33.87 feet to a point; thence, South 88 degrees 30 minutes 17 seconds East, 665.10 feet to a point; thence, leaving the aforesaid right of way of Georgia Highway 138 South 01 degrees 29 minutes 43 seconds West, 155.00 feet to a point on the apparent County Line between Fulton County, Georgia and Fayette County, Georgia; thence, with the said apparent County Line South 76 degrees 37 minutes 43 seconds West, 938.19 feet to a broken concrete monument found on the aforesaid right of way of Georgia Highway 279; thence, leaving the aforesaid apparent County Line and running with the aforesaid right of way of Georgia Highway 279 North 12 degrees 54 minutes 43 seconds West, 76.70 feet to a 1/2 inch rebar found; thence, 278.83 feet along the said arc of a curve deflecting to the left, having a radius of 1,956.62 feet and a chord bearing and distance of North 16 degrees 16 minutes 37 seconds West, 278.59 feet to a point located at aforesaid mitered corner; thence across the said miter, North 36 degrees 57 minutes 09 seconds East, 59.62 feet to a point and the point of beginning, containing 268,724 square feet or 6.1691 acres of land, more or less

Said property containing 6.1691 acres as shown on ALTA/ASCM Survey for Ticor Title Insurance Company, et al. by Terra Mark Professional Land Surveying, certified by Paul B. Cannon, GRLSN 2928 dated May 31, 2007, last revised March 11 , 2008.

# EXHIBIT B

## PERMITTED EXCEPTIONS

1. All taxes for the year 2008 and subsequent years, which are liens not yet due and payable.

2. Easement to Georgia Power Company from J.A.E. Cox dated May 17, 1937, recorded July 29, 1937 in Deed Book 1656, Page 68, Fulton County, Georgia records and in Deed Book Z, Page 208, Fayette County, Georgia records.

3. Right-of-Way Deed from Hayden A. Cox and Edwina C. Wildes to Department of Transportation dated December 13, 1980, recorded December 19, 1980 in Deed Book 7731, Page 7, Fulton County, Georgia records.

4. Right-of-Way Deed from Hayden A. Cox to Department of Transportation recorded January 14, 1981 in Deed Book 7751, Page 77, Fulton County records.

5. Right-of-Way Deed from Nakato, Inc. to Department of Transportation dated June 3, 1986, recorded in Deed Book 10197, Page 187, Fulton County records.

6. Sewer Easement dated June 8, 2000 from the Most Reverend John F. Donoghue, D.D., as Archbishop of the Roman Catholic Archdiocese of Atlanta and/or His Successors in Office to Fulton County, a Political Subdivision of the State of Georgia, recorded in Deed Book 29333, Page 419, Fulton County records.

7. Restrictive Covenants contained in Limited Warranty Deed dated June 1, 2006, recorded in Deed Book 42779, page 561, Fulton County records.

8. Indemnification Agreement contained in Affidavit of Corporate Owner dated October 4, 2006 recorded in Deed Book 44002, Page 235, Fulton County records.

9. Right-of-Way Deed from Old National Station, LLC to Department of Transportation dated April 19, 2007, recorded in Deed Book 44860, Page 1, Fulton County records, as affected by Corrective Right of Way Deed dated June 29, 2007 recorded in Deed Book 45297, Page 561, Fulton County records.

10. Sanitary Sewer Easement dated June 7, 2007 by and between Old National Station, LLC, as grantor and Catholic Education of North Georgia, Inc. f/k/a Catholic School Properties, Inc., as grantee, recorded in Deed Book 45297, Page 565, Fulton County records.

11. All matters as disclosed by that certain survey entitled ALTA/ACSM Land Title Survey for Ticor Title Insurance Company, et al., prepared by Terra Mark Professional Land Surveying, bearing the seal and certification of Paul B. Cannon, Georgia Registered Land Surveyor No. 2928, dated May 31, 2007, last revised March 11, 2008.

Deed Book 46519 Pg 564
Catherene Robinson
Clerk of Superior Court
Fulton County, Georgia

Deed Book 49049 Pg   453
Filed and Recorded May-25-2010 01:57pm
2010-0220175
Georgia Intangible Tax Paid $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

After recording, return to:
Kimberly S. Justus
Womble Carlyle Sandridge & Rice, PLLC
271 17th Street, N.W.
Suite 2400
Atlanta, Georgia 30363

CROSS REFERENCE TO:

Deed to Secure Debt, Absolute Assignment of Rents
and Security Agreement dated March 19, 2008 filed in
Deed Book 46519, Page 545, Fulton County, Georgia
records, as modified from time to time

## DEED TO SECURE DEBT MODIFICATION AGREEMENT

THIS DEED TO SECURE DEBT MODIFICATION AGREEMENT ("Agreement") is entered into as of March 19, 2010, by and between ODYSSEY (VIII) COMMERCIAL DP l, LLC, a Florida limited liability company, formerly known as ODYSSEY (VI) COMMERCIAL DP III, LLC ("Borrower"), and BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation ("Lender").

## WITNESSETH:

WHEREAS, on March 19, 2008, Borrower and Lender, entered into that certain loan transaction (the "Loan") pursuant to which Borrower executed a promissory note in the amount of $5,175,000.00, as modified from time to time (as the same may have been or may be further amended, restated, modified, or supplemented from time to time, the "Note"), which Note was further evidenced and secured by, inter alia, that certain Deed to Secure Debt, Absolute Assignment of Rents and Security Agreement dated March 19, 2008 filed in Deed Book 46519, Page 545, Fulton County, Georgia records, as modified from time to time (as the same may have been or may be amended, restated, modified, or supplemented from time to time, the "Security Deed", the Note, and all other documents executed in connection with the Loan being collectively referred to as the "Loan Documents");

WHEREAS, Borrower has requested that Lender renew and extend the maturity date of the Loan to June 19, 2010 pursuant to that certain Note Modification Agreement executed by Borrower of even date herewith; and

NOTE TO CLERK OF SUPERIOR COURT: THIS INSTRUMENT MODIFIES A DEED TO SECURE DEBT SECURING A SHORT-TERM NOTE MATURING ON JUNE 19, 2010, WITH RESPECT TO WHICH NO GEORGIA INTANGIBLE RECORDING TAX IS DUE

WCSR 4355912v1

Deed Book 49049 Pg  454

WHEREAS, Lender has agreed to so extend the Loan in accordance with the aforementioned request, subject to the terms and conditions hereof and the execution by Borrower of such other documents as Lender may reasonably request.

NOW, THEREFORE, for and in consideration of the promises contained herein and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, Borrower agrees with Lender as follows:

1.  Recitals. The recitals set forth hereinabove and all terms and conditions of the Loan Documents are incorporated herein as if fully set forth, and the effective date of this Agreement is deemed to be the date hereof.

2.  Maturity Date. The Security Deed is amended to reflect that the Loan shall mature on June 19, 2010.

3.  Ratification of Borrower. Borrower ratifies, confirms, and reaffirms its obligations owed to Lender under the Loan and the accuracy of all representations and warranties contained in the Loan Documents, and that this Agreement shall not constitute a novation of the indebtedness evidenced by the Loan Documents, that the terms and provisions of the Loan Documents shall remain valid and in full force and effect, except as herein modified and amended, that this Agreement shall in no way occasion a release of any collateral, and that all collateral held by Lender as security to or for the Loan shall continue to secure the Loan. Borrower hereby authorizes and directs Lender to take action necessary to conform the Loan Documents to the terms as herein modified and accept and confirm the Loan Documents with the terms herein modified.

4.  No Waiver of Implication. Borrower hereby agrees that nothing herein shall constitute a waiver by Lender of any default, whether known or unknown, which may exist under the Loan Documents. Borrower hereby further agrees that no action, inaction or agreement by Lender, including, without limitation, any extension, indulgence, waiver, consent, or agreement of modification which may have occurred or been granted or entered into (or which may be occurring or be granted or entered into hereunder or otherwise) with respect to non-payment of the Loan or any portion thereof, or with respect to matters involving security for the Loan, or with respect to any other matter relating to the Loan, shall require or imply any future extension, indulgence, waiver, consent or agreement by Lender. Borrower hereby acknowledges and agrees that Lender has made no agreement, and is in no way obligated, to grant any future extension, indulgence, waiver or consent or enter into any further agreement of modification with respect to the Loan.

5.  Status. Borrower hereby represents and agrees that the Security Deed as modified hereby constitutes the entire agreement between Borrower and Lender with respect to the Security Deed. Nothing herein shall constitute and there has not otherwise occurred any extinguishment or release of or substitution for the obligations and agreements of Borrower under the Security Deed or any of the other Loan Documents, except as specifically provided in this Agreement, and nothing herein shall constitute and there has not otherwise occurred any novation with respect to the Security Deed or any other Loan Document.

6.  Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their respective heirs, successors, successors-in-title and assigns.

WCSR 4355912v1                                    - 2 -

Deed Book 49049 Pg 455

7.   Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia.

8.   Counterparts.  This Agreement may be executed in two or more counterparts, each of which when so executed and delivered shall be an original but all of which together shall constitute one and the same instrument.

9.   Time of the Essence.  Time is of the essence of this Agreement.

10.  Severability.  If any clause, sentence, section or provision of this Agreement is or becomes illegal, invalid or unenforceable because of present or future laws or any rule or regulation of any governmental body or entity, the intention of the parties hereto is that the remaining parts of this Agreement shall not be affected thereby.

11.  Construction.  Borrower and Lender have each been represented by their respective counsel in the negotiation and execution of this Agreement, and said parties each acknowledge and agree that they have participated in the preparation and negotiation of this Agreement. No party hereto shall be deemed the scrivener of this Agreement, and it is the intent and agreement of Borrower and Lender that this Agreement shall not be construed strictly for or against any party hereto.

12.  Miscellaneous.  All personal pronouns used herein whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa.  Titles of articles and sections as set forth herein are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provisions hereof.

13.  No Other Modification.  Except as expressly amended and modified herein, all terms, covenants and provisions of the Security Deed shall remain unaltered and in full force and effect, and the parties hereto do hereby expressly ratify and confirm the Security Deed as modified hereby.

[SIGNATURES ON FOLLOWING PAGES]

Deed Book 49049 Pg   456

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal effective as of even date hereof.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public

[NOTARIAL SEAL]

Commission Expiration Date:

7-7-12

**BORROWER:**

ODYSSEY (VIII) COMMERCIAL DP I, LLC, a Florida limited liability company formerly known as ODYSSEY (VI) COMMERCIAL DP III, LLC

By:   Odyssey Diversified Properties, Inc., a
Maryland corporation, its sole manager

By: _____ (SEAL)
Benjamin Falk, its Vice President

```
SUZANNE G. TREVILLIAN
Commission # DD 803933
My Commission Expires
July 07, 2012
```

[SIGNATURES CONTINUED ON NEXT PAGE]

Signature Page For
Deed to Secure Debt Modification Agreement
Page 1 of 2

WCSR 4355912v1

Deed Book 49049 Pg 457
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

LENDER:

Signed, sealed and delivered in the presence of:

BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation

_____
Unofficial Witness

By: _____
Randy Jones, Senior Vice President

_____
Notary Public

[NOTARIAL SEAL]

Commission Expiration Date:

_____

Signature Page For
Deed to Secure Debt Modification Agreement
Page 2 of 2

WCSR 4355912v1