IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



BRANCH BANKING & TRUST
COMPANY,

    Plaintiff,

vs.

                     CIVIL ACTION FILE
                     NO.:
                     1:13-cv-00643-RLV

ODYSSEY (VIII) DP I, LLC
f/k/a ODYSSEY (VI) COMMERCIAL
DP III, LLC, LAWRENCE TODD
MAXWELL and WILLIAM D. DROST,
    Defendants.


VIDEOCONFERENCE DEPOSITION OF WILLIAM D. DROST
Taken on Behalf of the Plaintiff
DATE TAKEN: August 22, 2013
TIME: 2:53 p.m. to 3:32 p.m.
PLACE: Sclafani Williams
Court Reporters
402 South Kentucky Avenue,
Suite 390
Lakeland, Florida
Stenographically Reported by:
Wendy Wyncoop, RPR, FPR



```
  1      APPEARANCES:

  2      Counsel for Plaintiff:

  3          ARTHUR A. EBBS, ESQUIRE (via videoconference)
             Womble Carlyle Sandridge & Rice
  4          Attorneys at Law
             271 17th Street, Suite 2400
  5          Atlanta, Georgia 30363

  6
         Counsel for Defendants:
  7
             ALAN L. PEREZ, ESQUIRE
  8          Saunders & McKendrick, P.A.
             Attorneys at Law
  9          480 South Broadway Avenue
             Bartow, Florida 33830
 10
             RALPH HAMILTON SCHOFIELD, JR., ESQUIRE
 11          MATTHEW R. CLARK, ESQUIRE
             Clark Campbell Lancaster & Munson, P.A.
 12          Attorneys at Law
             500 South Florida Avenue, Suite 800
 13          Lakeland, Florida 33801

 14

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
```

```
 1                        I   N   D   E   X
         WITNESS                                      PAGE
 2

 3       Called by the plaintiff:

 4

 5       WILLIAM D. DROST

 6            DIRECT EXAMINATION BY MR. EBBS            4

 7       CERTIFICATE OF REPORTER OATH                  28

 8       REPORTER'S DEPOSITION CERTIFICATE             29

 9

10                          EXHIBITS

11                  (Photocopies attached.)

12

13       Exhibit #1   (Verified Complaint)            10

14       Exhibit #3   (Sources and Uses of Funds      22

15       Statement)

16       Exhibit #4   (Amounts Received from BB&T)     23

17       Exhibit #5   (Answer)                         25

18

19   Note:   Exhibit 2 was not attached.

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2          WILLIAM D. DROST, called as a witness by the

 3     plaintiff, having been first duly sworn, testified as

 4     follows:

 5              THE WITNESS:  Yes, I do.

 6              MR. EBBS:    This will be the deposition of

 7     .. William Drost being taken in the case styled Branch

 8         Banking and Trust Company versus Odyssey (VIII) DP

 9         I, LLC, Laurence Todd Maxwell and William D. Drost

10         pending in the United States District Court, the

11         Northern District of Georgia, Atlanta Division.

12         It's case number 1:13-cv-643.

13                    DIRECT EXAMINATION

14     BY MR. EBBS:

15      Q.   Mr. Drost, my name is Arthur Ebbs.  I'm an

16     attorney with Womble Carlyle Sandridge & Rice in our

17     firm's Atlanta office.  I'm actually sitting in a

18     conference room in my office right now.  I didn't really

19     see the need to travel to Florida for this, so thank you

20     for appearing by videoconference.  I appreciate it.

21              I don't know if you've been deposed before or

22     not, but I'm going to ask you a series of questions

23     today about various topics related to the loan at issue

24     in the lawsuit.  While I'm asking you these questions if

25     you would allow me to finish the question before
```

1    answering so we don't talk over each other, it helps

2    with the court reporter and the fact that we're doing

3    this via video there may be a slight delay, so pauses

4    are definitely good.

5         Mr. Maxwell was just being deposed.  We ended

6    about 20, 25 minutes ago.  It only took about an hour.

7    I don't think that this will take that much longer, but

8    if we get to a point where you want to take a break just

9    let me know and we can do that just as long as there's

10   not a question pending or anything like that.

11   A.   Okay.

12   Q.   If you don't understand a question that I ask

13   you or the video feed interrupts or something like that,

14   just let me know and I'll try to re-ask it a different

15   way or re-ask it altogether if the video feed drops or

16   we can ask the court reporter for some help with that

17   too.  So I'm ready to begin, and my first question for

18   you, Mr. Drost, is just that you state your full entire

19   name for the record.

20   A.   William D. Drost, William David Drost.

21   Q.   And Mr. Drost, I understand that today you are

22   here in your personal capacity but also as a

23   representative of Odyssey (VIII) DP I, LLC; is that

24   correct?

25   A.   Yes.

1          MR. CLARK:  And just to help you we'll

2      stipulate that Mr. Drost is here appearing on his

3      personal capacity and as the corporate capacity as

4      outlined in your notice of deposition.

5          MR. EBBS:  And just to be abundantly clear that

6      means that Mr. Drost has the authority and ability

7      to bind the corporation with answers that he gives

8      today.

9          THE WITNESS:  Yes.

10     Q.   Mr. Drost, where do you currently reside?

11     A.   1429 Oak Lawn Place, Lakeland, Florida.

12     Q.   How long have you lived there?

13     A.   Eight years.

14     Q.   And when were you born?

15     A.   1971.

16     Q.   Do you currently work for the Century Group or

17     the Century Companies?

18     A.   Yes.  I'm one of their affiliated companies.

19     Q.   Sure.  What's the name of the affiliated

20     company?

21     A.   I work directly for Anchor Investment

22     Corporation of FLA.

23     Q.   And what does Anchor Investment Corporation do?

24     A.   They're a real estate -- commercial real estate

25     operator/owner.

```
 1       Q.   Did you go to college, Mr. Drost?

 2       A.   Yes.

 3       Q.   What's the highest degree that you've obtained?

 4       A.   An MBA.

 5       Q.   Where did you get your MBA from?

 6       A.   Florida Southern College.

 7       Q.   And if you have an MBA I take it that means you

 8  have a bachelor's degree.  Where did you obtain your

 9  bachelor's from?

10       A.   Same place, Florida Southern College.

11       Q.   When did you graduate from Florida Southern

12  College with your undergraduate degree?

13       A.   1993.

14       Q.   So you went to college with Mr. Maxwell?

15       A.   Actually I did.

16       Q.   How long have you known Mr. Maxwell?

17       A.   Since 1999.

18            MR. PEREZ:  Arthur, just for the record are you

19       talking about Lawrence F. Maxwell?

20            MR. EBBS:  That's correct.  Mr. Maxwell is a

21       defendant in this case.

22       A.   Same 1999.

23       Q.   And my understanding is that you are married to

24  Mr. Maxwell's sister; is that correct?

25       A.   Yes.
```

1       Q.    Since you graduated from college have you

2    worked for the Century Group -- Century Companies the

3    entire time?

4       A.    No, I have not.

5       Q.    When did you first go to work with Century

6    Companies?

7       A.    In 2000.

8       Q.    What did you do from a professional prospective

9    before 2000?

10      A.    I was a commercial lender for a bank.

11      Q.    Which bank did you work for?

12      A.    South Trust Bank.

13      Q.    Besides South Trust did you ever work for any

14   other banks?

15      A.    No, that's the only bank.

16      Q.    Did you go to work with South Trust upon your

17   graduation from college?

18      A.    Basically.  I mean there was a slight delay but

19   pretty much.

20      Q.    And have you been employed with the Century

21   Companies broad umbrella since -- consecutively since

22   2000?

23      A.    Yes.

24      Q.    Have you lived in Florida your whole life?

25      A.    Yes.

```
 1        Q.    Do you have any family in the State of Georgia?

 2        A.    My wife has family there, cousins.

 3        Q.    Where in Georgia does that family reside?

 4        A.    It's in the Atlanta suburbs.  I don't remember

 5   the exact name.

 6        Q.    What is the last name of any of those family

 7   members?

 8        A.    Richards and Throckmorton and Watson.

 9        Q.    I want the -- I want you to take a look at

10   that -- open up that binder that's in front of you.  I

11   think it's the correct binder and flip to tab 1 of the

12   binder.

13        MR. CLARK:  And Arthur, may I ask are these --

14        there's two binders on the table.  To the extent you

15        know are these duplicate copies, one for counsel to

16        review and one for the witness?

17        MR. EBBS:  Yes.  The one that is in front of

18        Mr. Drost is marked now with exhibit stickers.  And

19        for the court reporter I'm going to use the same

20        exhibit numbers and if we add anything else I will

21        just start with whatever number we left off with in

22        Mr. Maxwell's deposition.

23        Mr. Drost, marked as Exhibit Number 1 is the

24        verified complaint filed by BB&T in the lawsuit that

25        we are here about today.
```

1          (Exhibit 1 was marked for identification.)

2      Q.   Have you seen this document before?

3      A.   I believe I have, yes.

4      Q.   As a general proposition do you know what loan

5   and development project that this lawsuit concerns?

6      A.   Yes.

7      Q.   Are you familiar with the Old National Station

8   project in Fulton County?

9      A.   Yes.

10     Q.   What stage of completion did the development of

11  the Old National Station project get to?

12     A.   I believe it was nearly complete.  I mean it

13  was a built commercial shopping center with some

14  interior build-out left to go, but for the most part it

15  was a complete project.  I never saw it myself

16  personally.

17     Q.   Have you -- strike that.

18          Did you have any relationships with any bankers

19  from BB&T located in the State of Georgia?

20     A.   I met with some.  I did not have a close

21  relationship, but we did meet and talk on the phone

22  some.

23     Q.   Did you -- and I wasn't totally clear.  Have

24  you ever visited the Old National Station project

25  personally at any stage of completion at any point in

```
 1   time?

 2        A.    I did prior to construction when it was still

 3   land.

 4        Q.    But you were in Georgia looking at the land

 5   that the shopping center was going to be built on?

 6        A.    Correct.

 7        Q.    Now, did Odyssey (VIII) DP I, LLC -- and I'm

 8   just going to call it the Odyssey entity because that's

 9   quite a mouth full.  But did the Odyssey entity intend

10   to build the shopping center and then lease it and

11   operate itself or was it planning to build the shopping

12   center and then sell it to another investor?

13        A.    The original intent was to build it and operate

14   it itself.

15        Q.    Were any leases ever entered into for the Old

16   National Station --

17        A.    Yes.

18        Q.    -- property?

19        A.    Yes.

20        Q.    Were there ever any tenants in the Old National

21   Station property?

22        A.    As far as I know there were.  I mean I'm not

23   100 percent sure, but I believe that there were.

24        Q.    Did the Odyssey entity or any other related

25   company ever receive lease payments from tenants in the
```

1    Old National Station property?

2        A.    I was not directly involved with the receipt of

3    the payments, but I would assume that they would have.

4        Q.    Who would be the person within the Century

5    Group that would have the most knowledge about lease

6    payments?

7        A.    Well, we would have had a property manager at

8    the time who was working that property, and they are no

9    longer with us.

10       Q.    Was it a property manager that was working all

11   the properties in Georgia?

12       A.    Most likely, yes.  I think that is correct.

13       Q.    Do you know what that person's name is?

14       A.    I believe it was Will Reynolds.

15       Q.    Do you know where Mr. Reynolds is today?

16       A.    I believe he is self-employed as a general

17   contractor.

18       Q.    I want you to turn to the fourth page of

19   Exhibit Number 1.  I believe that you admitted this in

20   your answer and Odyssey admitted it in its answer, but

21   do you dispute at all that Odyssey entered into a

22   $5,175,000 promissory note with BB&T on March 19, 2008.

23       A.    No, I do not.

24       Q.    And do you dispute that BB&T advanced funds to

25   Odyssey pursuant to that note?

1     A.    I do not dispute that.

2     Q.    Who within the Century Group was responsible

3  from a day to day perspective for the development of the

4  Old National Station project?

5     A.    At the time -- this was in two thousand -- I

6  believe 2008 or 9, you know, I don't recall.  I was not

7  at the time that this was being constructed -- the day

8  to day operations would have probably been Charlie

9  Boskarino.

10     Q.    I believe that you've already admitted this in

11  your answer, but do you agree that you executed a

12  personal guarantee of the loan from BB&T to the Odyssey

13  entity?

14           MR. CLARK:  Object to the form.

15     A.    I did execute a personal guarantee.

16     Q.    I want you to flip forward in Exhibit Number 1

17  to Exhibit E attached thereto, and I will help you with

18  that.  At the top it will be marked with document 1-5.

19     A.    Okay.

20     Q.    If you look at page number 2 of 8 through 8 of

21  8 of document 1-5 this I understand is the unconditional

22  guarantee security agreement that you executed.  Do you

23  recall seeing this document before?

24     A.    Yes.

25     Q.    Did you read this document before you signed

1    it?

2        A.    I can't specifically tell you I did, but I

3    assume I would have if I signed it.

4        Q.    Take a look at page 8 of 8.   There's a

5    signature above the text William D. Drost.   Is that your

6    signature?

7        A.    It is.

8        Q.    And there's a notary named Deronda R. Evans who

9    signed it.   Do you know who Ms. Evans is?

10       A.    I do.

11       Q.    Is she an employee of the Century Group?

12       A.    She is.

13       Q.    I want you to flip forward two pages from where

14   you are right now.   It's marked as document 1.6 exhibit

15   F to the complaint, beginning on page 2 of 7 there's a

16   copy of a letter addressed to Odyssey (VIII) DP I, LLC,

17   Lawrence Todd Maxwell and William D. Drost from my law

18   partner Russell Berry dated August 5, 2010?

19       A.    Okay.

20       Q.    Have you seen this letter before?

21       A.    I don't recall.

22       Q.    Are you familiar with a foreclosure sale that

23   BB&T conducted of the Old National Station property?

24       A.    I do know that it happened.   I'm not that

25   familiar with it.

```
 1        Q.    Do you know why BB&T conducted a foreclosure

 2   sale of Old National Station property?

 3        A.    I don't understand the question.  Can you

 4   rephrase the question?

 5        Q.    Sure.  Do you know why BB&T sought a reason to

 6   foreclose upon the Old National Station property?

 7        A.    I can't make a speculation as to why they did

 8   what they did.

 9        Q.    Was Odyssey in default of its obligations under

10   the promissory note to BB&T?

11        A.    Yes.

12        Q.    Do you know if there's a balance owed on the

13   promissory note payable to BB&T?

14        A.    Yes, there is.

15        Q.    Have you ever attempted to calculate what the

16   balance might be?

17        A.    We provided documentation I believe that showed

18   what was funded.

19        Q.    If you wanted to go somewhere to determine what

20   payments the Odyssey entity made on the loan, where

21   would you go to figure that out?

22        A.    We have records in our office.

23        Q.    Are they computer records or are they written

24   records?

25        A.    I assume they're mostly written records.
```

1        Q.   In the complaint BB&T alleged that as of

2    February 13, 2013 the outstanding loan balance including

3    principal and accrued interest was $762,032.50.  Do you

4    have any reason to dispute that?

5        A.   Well, that's not what our records reflected,

6    but I assume that's after the sale.

7        Q.   And that kind of dovetails back to the

8    foreclosure sale.  Do you know how much the property

9    sold for in the foreclosure sale?

10       A.   From reading the documents it was roughly 3.6

11   million.

12       Q.   I will represent to you that the proceeds of

13   foreclosure sale were actually 3.9 million dollars.  So

14   with that in mind do you have any reason to dispute the

15   balance that BB&T contends is owed of -- as of February

16   13, 2013 of $762,032.50?

17            MR. CLARK:  Object to the form.

18       Q.   You can answer if you can.

19       A.   I don't know how to answer.  I mean I know that

20   we have not determined what the value is.  I mean that

21   was an affiliated sale, so I don't know that I can

22   answer that.

23       Q.   Are you familiar with foreclosure confirmation

24   in the State of Georgia?

25       A.   Not really.  I mean based on our operations are

1    out of the State of Florida.

2        Q.    Did you know that Odyssey (VIII) DP I, LLC was

3    a defendant in a prior lawsuit pending in the Superior

4    Court of Fulton County which is Atlanta, the city of, in

5    which BB&T sought to confirm the foreclosure sale under

6    Georgia law at the value of 3.9 million dollars?

7            MR. PEREZ:   Object to the form.

8        A.    You're asking if I'm familiar with that or if

9    I'm aware of that?

10       Q.    Right.

11       A.    I mean I'm sure that I read that.   I mean I'm

12   not intimately familiar with it.

13       Q.    Take a look at the very last three pages of

14   Exhibit Number 1.   And what I want you to look at is

15   Exhibit G to the complaint.   It's a copy of the order

16   confirming foreclosure sale signed by Judge Wright of

17   the Superior Court of Fulton County.   It's file stamped

18   March 17, 2011 and it's an order confirming the

19   foreclosure sale in which Judge Wright found that 3.9

20   million dollars, the amount on bid the property was --

21   quote was equal to or exceeded the true market value of

22   the property on the date of the sale.   Have you seen

23   this order before?

24       A.    I don't recall.

25       Q.    Were you present at the confirmation hearing

```
 1    held in the Superior Court of Fulton County on March 17

 2    of 2011?

 3         A.   No, I was not.

 4         Q.   Do you know if Odyssey contested the

 5    confirmation sale or confirmation -- strike that.

 6              Do you know if Odyssey contested the

 7    confirmation action?

 8         A.   I do not know.

 9         Q.   Going back to the balance that BB&T contends is

10    owed on the note I believe that you've testified that

11    you don't know whether that is correct or not.  For

12    purposes of clarity have you made any attempt to compute

13    the balance that you believe is owed on the note?

14              MR. CLARK:  Object to the form.

15         A.   I mean other than providing the documentation,

16    no.

17         Q.   So you've never sat down with a spreadsheet or

18    a calculator or anything like that to try to figure out

19    the balance on your own?

20         A.   No, I've not.

21         Q.   Then you don't contend that the amount due is

22    some specific dollar amount.  You just don't know; is

23    that correct?

24              MR. PEREZ:  Object to the form.

25              MR. CLARK:  Same objection.
```

1      A.    I've not -- your previous question is the same

2   answer.   I've not sat down and crunched the numbers

3   myself.

4      Q.    Do you plan on sitting down and crunching the

5   numbers yourself?

6          MR. CLARK:   I object to the extent we're

7          talking about any potential work product for trial

8          but Bill can answer the question.

9      A.    I had not planned on it, no.

10      Q.    Who within the specific Odyssey entity or the

11   Century Group -- you know what, strike that.

12          Does the Odyssey entity that's a defendant in

13   this lawsuit have any assets right now to your

14   knowledge?

15      A.    I don't believe so.   This was a single asset

16   entity which was foreclosed.

17      Q.    That was going to be my next question.   I think

18   we've established that you and Mr. Maxwell were

19   guarantees -- guarantors on the loan at issue?

20          MR. CLARK:   Object to form.

21      Q.    Why were you and Mr. Maxwell guarantors rather

22   than anyone else?

23          MR. CLARK:   Object to the form.

24          MR. PEREZ:   Object to form.

25      Q.    You can answer.

1    A.    Well, we were in charge of the commercial

2    division of the company at the time.

3    Q.    Did you and Mr. Maxwell have the only equity

4    stakes in this particular project or were there other

5    individuals that had equity stakes in the Old National

6    Station project?

7        MR. PEREZ:   Object to the form, lack of

8        predicate.

9    A.    I believe there were others.  We were not the

10   only ones, but I don't recall.

11   Q.    Who were the owners of the Odyssey entity

12   that's a defendant in this lawsuit?

13   A.    I don't recall the exact ownership of the

14   entity.

15   Q.    Who within the Century Group would be able to

16   explain the ownership structure of the Odyssey entities?

17   A.    Well, I mean I could with some research into

18   it.  I don't know at this point.

19   Q.    Why was the name of the Odyssey entity changed

20   from Odyssey (VIII) DP I, LLC from Odyssey (VI)

21   Commercial DP III, LLC?

22   A.    I do not recall.

23   Q.    Do you know who the members of Odyssey (VIII)

24   DP I, LLC are?

25   A.    No, I do not.

1      Q.    There were approximately 50 pages of documents

2    produced to me by Odyssey.  Have you seen those

3    documents before?

4      A.    **Which ones are you referring to?**

5      Q.    Well, there was a series of documents that your

6    lawyer sent to me in e-mails and in, you know, paper

7    form through the mail.  Did you assist with assembling

8    those documents so that they could be produced?

9      A.    **If you're referring to the documents that**

10   **showed the amount of the funding and the amounts that we**

11   **received and the payments made, yes.**

12     Q.    Other than those documents are there any other

13   documents that are in the possession of Odyssey or any

14   of the entities that might control Odyssey that would

15   shed any light or that you would use were you to prepare

16   a calculation of what you contend the balance owed on

17   the note is?

18            MR. PEREZ:  Object to form.

19            MR. CLARK:  Object to the extent calling for

20        any attorney/client privilege or work product or

21        other objectionable discovery.

22     Q.    That's not what I'm asking for.  I'm not asking

23   him for work product.  I'm not asking him for

24   attorney/client privilege information.  What I am asking

25   you, Mr. Drost, is whether or not there are any

BB&T vs. Odyssey                    William Drost                    08/22/2013

```
1     A.    Well, we were in charge of the commercial
2   division of the company at the time.
3     Q.    Did you and Mr. Maxwell have the only equity
4   stakes in this particular project or were there other
5   individuals that had equity stakes in the Old National
6   Station project?
7           MR. PEREZ:  Object to the form, lack of
8       predicate.
9     A.    I believe there were others.  We were not the
10  only ones, but I don't recall.
11    Q.    Who were the owners of the Odyssey entity
12  that's a defendant in this lawsuit?
13    A.    I don't recall the exact ownership of the
14  entity.
15    Q.    Who within the Century Group would be able to
16  explain the ownership structure of the Odyssey entities?
17    A.    Well, I mean I could with some research into
18  it.  I don't know at this point.
19    Q.    Why was the name of the Odyssey entity changed
20  from Odyssey (VIII) DP I, LLC from Odyssey (VI)
21  Commercial DP III, LLC?
22    A.    I do not recall.
23    Q.    Do you know who the members of Odyssey (VIII)
24  DP I, LLC are?
25    A.    No, I do not.
```

1      Q.    There were approximately 50 pages of documents

2  produced to me by Odyssey.  Have you seen those

3  documents before?

4      A.    **Which ones are you referring to?**

5      Q.    Well, there was a series of documents that your

6  lawyer sent to me in e-mails and in, you know, paper

7  form through the mail.  Did you assist with assembling

8  those documents so that they could be produced?

9      A.    **If you're referring to the documents that**

10 **showed the amount of the funding and the amounts that we**

11 **received and the payments made, yes.**

12     Q.    Other than those documents are there any other

13 documents that are in the possession of Odyssey or any

14 of the entities that might control Odyssey that would

15 shed any light or that you would use were you to prepare

16 a calculation of what you contend the balance owed on

17 the note is?

18            MR. PEREZ:  Object to form.

19            MR. CLARK:  Object to the extent calling for

20     any attorney/client privilege or work product or

21     other objectionable discovery.

22     Q.    That's not what I'm asking for.  I'm not asking

23 him for work product.  I'm not asking him for

24 attorney/client privilege information.  What I am asking

25 you, Mr. Drost, is whether or not there are any

BB&T vs. Odyssey                     William Drost                     08/22/2013

```
 1    documents other than the ones that have been produced to
 2    BB&T located in your office or somewhere else that you
 3    would go to to attempt to determine what the balance
 4    owed on the note from the Odyssey entity to BB&T is?
 5         A.   As far as I know that is all the information
 6    that would be used to calculate that.
 7         Q.   So those documents and that's it?
 8         A.   To my knowledge, yes.
 9         Q.   Is there a computer system somewhere within the
10    Century Companies that keeps track of balances owed on
11    notes?
12         A.   Yes.  I think one of those sheets that was
13    printed out was from our software.
14         Q.   Do you know what the name of the software
15    package that is used is?
16         A.   Yes.
17         Q.   What is it?
18         A.   It's called Timberline.
19         Q.   Have you reviewed Timberline to attempt to
20    figure out what the balance owed on the note is?
21         A.   No, I have not personally.
22              (Exhibit 3 was marked for identification.)
23         Q.   I want you to take a look at tab number 11 in
24    the binder which was marked as Exhibit 3 to
25    Mr. Maxwell's deposition.  Have you seen exhibit
```

1    number -- have you seen Exhibit Number 3 before?

2        A.    Yes, I have.

3        Q.    What is Exhibit Number 3?

4        A.    It's a spreadsheet that was used to show

5    calculation of our sources and uses on the Old National

6    project.

7        Q.    Who prepared this document?

8        A.    I don't remember.  I mean this is an old

9    document.  I don't remember who would have prepared it.

10        Q.    Is this document something that you would have

11    seen in your role at the Century Companies or with the

12    specific Odyssey -- that specific Odyssey entity that's

13    at issue in this lawsuit?

14        A.    Most likely.

15              (Exhibit 4 was marked for identification.)

16        Q.    I want you to take a look at tab number 10 in

17    the binder, and I'll ask the court reporter to mark that

18    as the next exhibit.  I think it's exhibit number 4 now.

19              Mr. Drost, have you seen Exhibit Number 4

20    before?

21        A.    I have.

22        Q.    What is Exhibit Number 4?

23        A.    This is a calculation of the amounts that we

24    received from BB&T on our construction of Old National.

25        Q.    So if I was to look at the sum total at the

```
 1    bottom of $4,444,639.75 is that the total amount that

 2    BB&T advanced to the Odyssey entity for the construction

 3    of the project?

 4        A.    According it to our records that's what we

 5    show.

 6        Q.    Okay.  Is?

 7        A.    Well, there was a pay down so they didn't

 8    advance all of that if I'm reading this correct.

 9        Q.    Sure.  I'm -- less pay down at the bottom?

10        A.    Yes.

11        Q.    Is this a document that was prepared

12    specifically to respond to the interrogatories in the

13    request for production that I served in this case or is

14    this something that was a historic document that was

15    pulled out of a file and produced to us?

16        A.    I do not know specifically if this was already

17    prepared or if it was done for this.

18        Q.    Who is Jim Lee?

19        A.    He's a local CPA.

20        Q.    Does he work for the Century Companies?

21        A.    He does not work directly for us, but he

22    does -- as a vendor he does some of our tax returns.

23        Q.    Do you know Jim Lee was ever a vice-president

24    of something called Odyssey Management (VI) LLC which

25    was apparently the managing member of Odyssey (VI)
```

1    Commercial DP 3, LLC?

2              MR. CLARK:  Object to the form.

3        A.    I don't know specifically what his title was at

4    the time, but I know he did have a role in our company

5    in the past.

6        Q.    Does he have a role in the company at all now?

7        A.    No, other than providing third party services.

8        Q.    What is your title with Anchor Investment

9    Corporation?

10        A.    President.

11        Q.    Mr. Maxwell testified that he's no longer

12    associated with the Century Group or the Century

13    companies.  Would you agree with that?

14        A.    Yes.

15              MR. EBBS:  Let's go off the record.

16              (Discussion off the record.)

17              (Exhibit 5 was marked for identification.)

18        Q.    Mr. Drost, if you could flip to tab 3 in the

19    binder, and I would like for the court reporter to mark

20    that as Exhibit Number 5.

21              This is the answer that was filed on behalf of

22    the Odyssey entity and yourself in this case by

23    Mr. Clark I believe.  Have you seen this document

24    before?

25        A.    I have.

```
 1        Q.   Now, I will point out for you that BB&T filed a

 2   verified complaint in this case which means that someone

 3   at BB&T, specifically a woman named Yvonne Beck, signed

 4   a verification where she stated under oath that

 5   everything in the complaint was true and accurate.  I do

 6   not see a similar verification to your answer.  But

 7   sitting here today do you know that the answer that was

 8   filed on your behalf and on behalf of the Odyssey entity

 9   is true and correct?

10        MR. CLARK:  Object to form.

11        A.   I have no reason not to believe that is the

12   case.

13        Q.   When was the last time you were physically in

14   the State of Georgia?

15        A.   March of this year.

16        Q.   Where in Georgia were you?

17        A.   We drove through to get to North Carolina.

18        Q.   When was the last time you came to Georgia on

19   any sort of business?

20        A.   You know, I don't remember.  I mean it's been a

21   long time but I do not recall.

22        Q.   Okay.  I think I'm done.  Do any of you

23   gentlemen in the room want to ask the witness any

24   questions?

25        MR. CLARK:  We don't on behalf of the defendant
```

1    here.  I don't know if Mr. Perez --

2          MR. PEREZ:  No questions by me.

3          MR. EBBS:  Okay.  That will conclude the

4    deposition.  Thank you, Mr. Drost.

5          MR. EBBS:  Thank you and we'll go off the

6    record now.

7          THEREUPON, the deposition of WILLIAM D. DROST,

8    taken at the instance of the plaintiff, was concluded at

9    3:32 p.m.

10

11          NOTE:  The original and one copy of the

12   foregoing deposition will be held by Mr. Ebbs; copies to

13   Mr. Schofield and Mr. Perez.

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   CERTIFICATE OF REPORTER OATH

 2

 3    STATE OF FLORIDA

 4    COUNTY OF POLK

 5

 6          I, the undersigned authority, hereby certify

 7    that the witness named herein personally appeared before

 8    me and was duly sworn.

 9

10          WITNESS my hand and official seal this 22nd day

11    of August 2013.

12

13

14

15

16          _____

17    WENDY WYNCOOP, RPR, FPR

18    NOTARY PUBLIC - STATE OF FLORIDA

19    MY COMMISSION NO. EE 009395

20    EXPIRES:  July 28, 2014

21

22

23

24

25
```

```
 1              REPORTER'S DEPOSITION CERTIFICATE

 2

 3   STATE OF FLORIDA

 4   COUNTY OF POLK

 5

 6        I, WENDY WYNCOOP, Registered Professional

 7   Reporter, and Notary Public in and for the State of

 8   Florida at large, hereby certify that the witness

 9   appeared before me for the taking of the foregoing

10   deposition, and that I was authorized to and did

11   stenographically and electronically report the

12   deposition, and that the transcript is a true and

13   complete record of my stenographic notes and recordings

14   thereof.

15        I FURTHER CERTIFY that I am neither an attorney,

16   nor counsel for the parties to this cause, nor a

17   relative or employee of any attorney or party connected

18   with this litigation, nor am I financially interested in

19   the outcome of this action.

20        DATED THIS 22nd day of August 2013 at Lakeland,

21   Polk County, Florida.

22

23

24   _____
          WENDY WYNCOOP, RPR, FPR

25
```

VIA EMAIL


Date: 9/4/2013

To: Matthew Clark

Re: Signature of Deponent William Drost



Greetings:

The deponent has reserved the right to read and sign. Please
have the deponent review the attached .pdf transcript,
noting any changes or corrections on the attached .pdf
Errata.  The deponent may fill out the Errata electronically
or print and fill out manually.

Once the Errata is signed by the deponent and notarized,
please mail it to the offices of Tiffany Alley (below).

When the signed Errata is returned to us, we will seal and
forward to the taking attorney to file with the original
transcript.  We will also send copies of the Errata to all
ordering parties.

If the signed Errata is not returned within the time below,
the original transcript may be filed with the court without
the signature of the deponent.



Date Errata due back at our offices: 10/4/2013



Please send completed Errata to:
Tiffany Alley Reporting & Video
3348 Peachtree Rd NE, Tower 200, Ste 700
Atlanta, Georgia 30326
(770) 343-9696

ERRATA

JOB NUMBER: 52916

I, the undersigned, do hereby certify that I have read the transcript of my testimony, and that

☐  There are no changes noted.

☐  The following changes are noted:

Pursuant to Rule 30(7)(e) of the Federal Rules of Civil Procedure and/or OCGA 9-11-30(e), any changes in form or substance which you desire to make to your testimony shall be entered upon the deposition with a statement of the reasons given for making them.  To assist you in making any such corrections, please use the form below. If additional pages are necessary, please furnish same and attach.

❖  PAGE _____ LINE _____ CHANGE _____

_____

REASON FOR CHANGE _____

❖  PAGE _____ LINE _____ CHANGE _____

_____

REASON FOR CHANGE _____

❖  PAGE _____ LINE _____ CHANGE _____

_____

REASON FOR CHANGE _____

❖  PAGE _____ LINE _____ CHANGE _____

_____

REASON FOR CHANGE _____

❖  PAGE _____ LINE _____ CHANGE _____

_____

REASON FOR CHANGE _____

BB&T vs. Odyssey                    William Drost                    8/22/2013

❖   PAGE _____ LINE _____ CHANGE _____

_____

REASON FOR CHANGE _____

❖   PAGE _____ LINE _____ CHANGE _____

_____

REASON FOR CHANGE _____

❖   PAGE _____ LINE _____ CHANGE _____

_____

REASON FOR CHANGE _____

❖   PAGE _____ LINE _____ CHANGE _____

_____

REASON FOR CHANGE _____

❖   PAGE _____ LINE _____ CHANGE _____

_____

REASON FOR CHANGE _____

❖   PAGE_____ LINE_____ CHANGE _____

_____

REASON FOR CHANGE _____


_____
                    DEPONENT'S SIGNATURE

Sworn to and subscribed before me this _____ day of

_____, _____.


_____
NOTARY PUBLIC

My Commission Expires:_____

BB&T vs. Odyssey                    William Drost                    08/22/2013

**$**

**$4,444,639.75**
  24:1
**$5,175,000** 12:22
**$762,032.50** 16:3,
  16

**1**

**1** 9:11,23 10:1
  12:19 13:16 17:14
**1-5** 13:18,21
**1.6** 14:14
**10** 23:16
**100** 11:23
**11** 22:23
**13** 16:2,16
**1429** 6:11
**17** 17:18 18:1
**19** 12:22
**1971** 6:15
**1993** 7:13
**1999** 7:17,22
**1:13-cv-643** 4:12

**2**

**2** 13:20 14:15
**20** 5:6
**2000** 8:7,9,22
**2008** 12:22 13:6
**2010** 14:18
**2011** 17:18 18:2
**2013** 16:2,16
**25** 5:6

**3**

**3** 22:22,24 23:1,3
  25:1,18
**3.6** 16:10
**3.9** 16:13 17:6,19

**4**

**4** 23:15,18,19,22

**5**

**5** 14:18 25:17,20
**50** 21:1

**7**

**7** 14:15

**8**

**8** 13:20,21 14:4

**9**

**9** 13:6

**A**

**ability** 6:6
**abundantly** 6:5
**accrued** 16:3
**accurate** 26:5
**action** 18:7
**add** 9:20
**addressed** 14:16
**admitted** 12:19,20
  13:10
**advance** 24:8
**advanced** 12:24
  24:2
**affiliated** 6:18,19
  16:21
**agree** 13:11 25:13
**agreement** 13:22
**alleged** 16:1
**altogether** 5:15
**amount** 17:20
  18:21,22 21:10
  24:1
**amounts** 21:10
  23:23
**Anchor** 6:21,23
  25:8

**answering** 5:1
**answers** 6:7
**apparently** 24:25
**appearing** 4:20
  6:2
**approximately**
  21:1
**Arthur** 4:15 7:18
  9:13
**assembling** 21:7
**asset** 19:15
**assets** 19:13
**assist** 21:7
**assume** 14:3 15:25
  16:6
**Atlanta** 4:11,17
  17:4
**attached** 13:17
**attempt** 18:12
  22:3,19
**attempted** 15:15
**attorney** 4:16
**attorney/client**
  21:20,24
**August** 14:18
**authority** 6:6
**aware** 17:9

**B**

**bachelor's** 7:8,9
**back** 16:7 18:9
**balance** 15:12,16
  16:2,15 18:9,13,19
  21:16 22:3,20
**balances** 22:10
**bank** 8:10,11,12,
  15
**bankers** 10:18
**Banking** 4:8
**banks** 8:14
**based** 16:25
**Basically** 8:18
**BB&T** 9:24 10:19
  12:22,24 13:12
  14:23 15:1,5,10,13
  16:1,15 17:5 18:9

  22:2,4 23:24 24:2
  26:1,3
**Beck** 26:3
**begin** 5:17
**beginning** 14:15
**behalf** 25:21 26:8,
  25
**Berry** 14:18
**bid** 17:20
**Bill** 19:8
**bind** 6:7
**binder** 9:10,11,12
  22:24 23:17 25:19
**binders** 9:14
**born** 6:14
**Boskarino** 13:9
**bottom** 24:1,9
**Branch** 4:7
**break** 5:8
**broad** 8:21
**build** 11:10,11,13
**build-out** 10:14
**built** 10:13 11:5
**business** 26:19

**C**

**calculate** 15:15
  22:6
**calculation** 21:16
  23:5,23
**calculator** 18:18
**call** 11:8
**called** 4:2 22:18
  24:24
**calling** 21:19
**capacity** 5:22 6:3
**Carlyle** 4:16
**Carolina** 26:17
**case** 4:7,12 7:21
  24:13 25:22 26:2,
  12
**center** 10:13 11:5,
  10,12
**Century** 6:16,17
  8:2,5,20 12:4 13:2
  19:11 20:15 22:10

23:11 24:20 25:12
changed 20:19
charge 20:1
Charlie 13:8
city 17:4
clarity 18:12
Clark 6:1 9:13
  13:14 16:17
  18:14,25 19:6,20,
  23 21:19 25:2,23
  26:10,25
clear 6:5 10:23
close 10:20
college 7:1,6,10,
  12,14 8:1,17
commercial 6:24
  8:10 10:13 20:1,
  21 25:1
companies 6:17,
  18 8:2,6,21 22:10
  23:11 24:20 25:13
company 4:8 6:20
  11:25 20:2 25:4,6
complaint 9:24
  14:15 16:1 17:15
  26:2,5
complete 10:12,15
completion 10:10,
  25
compute 18:12
computer 15:23
  22:9
concerns 10:5
conducted 14:23
  15:1
conference 4:18
confirm 17:5
confirmation
  16:23 17:25 18:5,
  7
confirming 17:16,
  18
consecutively 8:21
constructed 13:7
construction 11:2
  23:24 24:2
contend 18:21
  21:16

contends 16:15
  18:9
contested 18:4,6
contractor 12:17
control 21:14
copies 9:15
copy 14:16 17:15
corporate 6:3
corporation 6:7,
  22,23 25:9
correct 5:24 7:20,
  24 9:11 11:6
  12:12 18:11,23
  24:8 26:9
counsel 9:15
County 10:8 17:4,
  17 18:1
court 4:10 5:2,16
  9:19 17:4,17 18:1
  23:17 25:19
cousins 9:2
CPA 24:19
crunched 19:2
crunching 19:4

─────────────
          D
─────────────

date 17:22
dated 14:18
David 5:20
day 13:3,7,8
default 15:9
defendant 7:21
  17:3 20:12 26:25
degree 7:3,8,12
delay 5:3 8:18
deposed 4:21 5:5
deposition 4:6 6:4
  9:22 22:25
Deronda 14:8
determine 15:19
  22:3
determined 16:20
development 10:5,
  10 13:3
DIRECT 4:13

directly 6:21 12:2
  24:21
discovery 21:21
discussion 25:16
dispute 12:21,24
  13:1 16:4,14
District 4:10,11
division 4:11 20:2
document 10:2
  13:18,21,23,25
  14:14 23:7,9,10
  24:11,14 25:23
documentation
  15:17 18:15
documents 16:10
  21:1,3,5,8,9,12,13
  22:1,7
dollar 18:22
dollars 16:13 17:6,
  20
dovetails 16:7
DP 4:8 5:23 11:7
  14:16 17:2 20:20,
  21,24 25:1
drops 5:15
Drost 4:2,7,9,15
  5:18,20,21 6:2,6,
  10 7:1 9:18,23
  14:5,17 21:25
  23:19 25:18
drove 26:17
due 18:21
duly 4:3
duplicate 9:15

─────────────
          E
─────────────

e-mails 21:6
Ebbs 4:6,14,15 6:5
  7:20 9:17 25:15
employed 8:20
employee 14:11
ended 5:5
entered 11:15
  12:21
entire 5:18 8:3
entities 20:16
  21:14

entity 11:8,9,24
  13:13 15:20
  19:10,12,16 20:11,
  14,19 22:4 23:12
  24:2 25:22 26:8
equal 17:21
equity 20:3,5
established 19:18
estate 6:24
Evans 14:8,9
exact 9:5 20:13
EXAMINATION
  4:13
exceeded 17:21
execute 13:15
executed 13:11,22
exhibit 9:18,20,23
  10:1 12:19 13:16,
  17 17:14,15 22:22,
  24,25 23:1,3,15,
  18,19,22 25:17,20
explain 20:16
extent 9:14 19:6
  21:19

─────────────
          F
─────────────

fact 5:2
familiar 10:7
  14:22,25 16:23
  17:8,12
family 9:1,2,3,6
February 16:2,15
feed 5:13,15
figure 15:21 18:18
  22:20
file 17:17 24:15
filed 9:24 25:21
  26:1,8
finish 4:25
firm's 4:17
FLA 6:22
flip 9:11 13:16
  14:13 25:18
Florida 4:19 6:11
  7:6,10,11 8:24
  17:1

BB&T vs. Odyssey                William Drost                08/22/2013

foreclose 15:6
foreclosed 19:16
foreclosure 14:22
  15:1 16:8,9,13,23
  17:5,16,19
form 13:14 16:17
  17:7 18:14,24
  19:20,23,24 21:7,
  18 25:2 26:10
forward 13:16
  14:13
found 17:19
fourth 12:18
front 9:10,17
full 5:18 11:9
Fulton 10:8 17:4,
  17 18:1
funded 15:18
funding 21:10
funds 12:24

**G**

general 10:4 12:16
gentlemen 26:23
Georgia 4:11 9:1,3
  10:19 11:4 12:11
  16:24 17:6 26:14,
  16,18
good 5:4
graduate 7:11
graduated 8:1
graduation 8:17
Group 6:16 8:2
  12:5 13:2 19:11
  20:15 25:12
guarantee 13:12,
  15,22
guarantees 19:19
guarantors 19:19,
  21

**H**

happened 14:24
hearing 17:25
held 18:1

helps 5:1
highest 7:3
historic 24:14
hour 5:6

**I**

identification 10:1
  22:22 23:15 25:17
III 20:21
including 16:2
individuals 20:5
information 21:24
  22:5
intend 11:9
intent 11:13
interest 16:3
interior 10:14
interrogatories
  24:12
interrupts 5:13
intimately 17:12
Investment 6:21,
  23 25:8
investor 11:12
involved 12:2
issue 4:23 19:19
  23:13

**J**

Jim 24:18,23
Judge 17:16,19

**K**

kind 16:7
knowledge 12:5
  19:14 22:8

**L**

lack 20:7
Lakeland 6:11
land 11:3,4
Laurence 4:9
law 14:17 17:6

Lawn 6:11
Lawrence 7:19
  14:17
lawsuit 9:24 10:5
  17:3 19:13 20:12
  23:13
lawyer 21:6
lease 11:10,25
  12:5
leases 11:15
Lee 24:18,23
left 9:21 10:14
lender 8:10
letter 14:16,20
life 8:24
light 21:15
lived 6:12 8:24
LLC 4:9 5:23 11:7
  14:16 17:2 20:20,
  21, 24:24 25:1
loan 4:23 10:4
  13:12 15:20 16:2
  19:19
local 24:19
located 10:19 22:2
long 5:9 6:12 7:16
  26:21
longer 5:7 12:9
  25:11

**M**

made 15:20 18:12
  21:11
mail 21:7
make 15:7
Management
  24:24
manager 12:7,10
managing 24:25
March 12:22
  17:18 18:1 26:15
mark 23:17 25:19
marked 9:18,23
  10:1 13:18 14:14
  22:22,24 23:15
  25:17

market 17:21
married 7:23
Maxwell 4:9 5:5
  7:14,16,19.20
  14:17 19:18,21
  20:3 25:11
Maxwell's 7:24
  9:22 22:25
MBA 7:4,5,7
means 6:6 7:7
  26:2
meet 10:21
member 24:25
members 9:7
  20:23
met 10:20
million 16:11,13
  17:6,20
mind 16:14
minutes 5:6
mouth 11:9

**N**

named 14:8 26:3
National 10:7,11,
  24 11:16,20 12:1
  13:4 14:23 15:2,6
  23:5,24
North 26:17
Northern 4:11
notary 14:8
note 12:22,25
  15:10,13 18:10,13
  21:17 22:4,20
notes 22:11
notice 6:4
number 4:12 9:21,
  23 12:19 13:16,20
  17:14 22:23 23:1,
  3,16,18,19,22
  25:20
numbers 9:20
  19:2,5

**O**

Oak 6:11

oath 26:4
object 13:14 16:17
  17:7 18:14,24
  19:6,20,23.24 20:7
  21:18,19 25:2
  26:10
objection 18:25
objectionable
  21:21
obligations 15:9
obtain 7:8
obtained 7:3
Odyssey 4:8 5:23
  11:7,8,9,24 12:20,
  21,25 13:12 14:16
  15:9,20 17:2 18:4,
  6 19:10,12 20:11,
  16,19,20,23 21:2,
  13,14 22:4 23:12
  24:2,24,25 25:22
  26:8
office 4:17,18
  15:22 22:2
open 9:10
operate 11:11,13
operations 13:8
  16:25
operator/owner
  6:25
order 17:15,18,23
original 11:13
outlined 6:4
outstanding 16:2
owed 15:12 16:15
  18:10,13 21:16
  22:4,10,20
owners 20:11
ownership 20:13,
  16

**P**

package 22:15
pages 17:13 21:1
paper 21:6
part 10:14
partner 14:18
party 25:7

past 25:5
pauses 5:3
pay 24:7,9
payable 15:13
payments 11:25
  12:3,6 15:20
  21:11
pending 5:10 17:3
percent 11:23
PEREZ 7:18 17:7
  19:24 20:7 21:18
person 12:4
person's 12:13
personal 5:22 6:3
  13:12,15
personally 10:16,
  25 22:21
perspective 13:3
phone 10:21
physically 26:13
place 6:11 7:10
plaintiff 4:3
plan 19:4
planned 19:9
planning 11:11
point 5:8 10:25
  20:18 26:1
possession 21:13
potential 19:7
predicate 20:8
prepare 21:15
prepared 23:7,9
  24:11,17
present 17:25
President 25:10
pretty 8:19
previous 19:1
principal 16:3
printed 22:13
prior 11:2 17:3
privilege 21:20,24
proceeds 16:12
produced 21:2,8
  22:1 24:15
product 19:7
  21:20,23

production 24:13
professional 8:8
project 10:5,8,11,
  15,24 20:4, 23:6
  24:3
promissory 12:22
  15:10,13
properties 12:11
property 11:18,21
  12:1,7,8,10 14:23
  15:2,6 16:8 17:20,
  22
proposition 10:4
prospective 8:8
provided 15:17
providing 18:15
  25:7
pulled 24:15
purposes 18:12
pursuant 12:25

**Q**

question 4:25
  5:10,12,17 15:3,4
  19:1,8,17
questions 4:22,
  26:24
quote 17:21

**R**

re-ask 5:14,15
read 13:25 17:11
reading 16:10
  24:8
ready 5:17
real 6:24
reason 15:5 16:4,
  14 26:11
recall 13:6,23
  14:21 17:24
  20:10,13,22 26:21
receipt 12:2
receive 11:25
received 21:11
  23:24

record 5:19 7:18
  25:15,16
records 15:22,23,
  24,25 16:5 24:4
referring 21:4,9
reflected 16:5
related 4:23 11:24
relationship 10:21
relationships
  10:18
remember 9:4
  23:8,9 26:20
rephrase 15:4
reporter 5:2,16
  9:19 23:17 25:19
represent 16:12
representative
  5:23
request 24:13
research 20:17
reside 6:10 9:3
respond 24:12
responsible 13:2
returns 24:22
review 9:16
reviewed 22:19
Reynolds 12:14,15
Rice 4:16
Richards 9:8
role 23:11 25:4,6
room 4:18 26:23
roughly 16:10
Russell 14:18

**S**

sale 14:22 15:2
  16:6,8,9,13,21
  17:5,16,19,22 18:5
Sandridge 4:16
sat 18:17 19:2
security 13:22
self-employed
  12:16
sell 11:12
series 4:22 21:5

served 24:13
services 25:7
shed 21:15
sheets 22:12
shopping 10:13
  11:5,10,11
show 23:3 24:5
showed 15:17
  21:10
signature 14:5,6
signed 13:25 14:3,
  9 17:16 26:3
similar 26:6
single 19:15
sister 7:24
sitting 4:17 19:4
  26:7
slight 5:3 8:18
software 22:13,14
sold 16:9
sort 26:19
sought 17:5
sources 23:5
South 8:12,13,16
Southern 7:6,10,
  11
specific 18:22
  19:10 23:12
specifically 14:2
  24:12,16 26:3
speculation 15:7
spreadsheet 18:17
  23:4
stage 10:10,25
stakes 20:4,5
stamped 17:17
start 9:21
state 5:18 9:1
  10:19 16:24 17:1
  26:14
stated 26:4
States 4:10
Station 10:7,11,24
  11:16,21 12:1
  13:4 14:23 15:2,
  20:6

stickers 9:18
stipulate 6:2
strike 10:17 18:5
  19:11
structure 20:16
styled 4:7
suburbs 9:4
sum 23:25
Superior 17:3,17
  18:1
sworn 4:3
system 22:9

                T

tab 9:11 22:23
  23:16 25:18
table 9:14
talk 5:1 10:21
talking 7:19 19:7
tax 24:22
tenants 11:20,25
testified 4:3 18:10
  25:11
text 14:5
thereto 13:17
thousand 13:5
Throckmorton
  9:8
Timberline 22:18,
  19
time 8:3 11:1 12:8
  13:5,7 20:2 25:4
  26:13,18,21
title 25:3,8
today 4:23 5:21
  6:8 9:25 12:15
  26:7
Todd 4:9 14:17
top 13:18
topics 4:23
total 23:25 24:1
totally 10:23
track 22:10
travel 4:19
trial 19:7

true 17:21 26:5,9
Trust 4:8 8:12,13,
  16
turn 12:18

                U

umbrella 8:21
unconditional
  13:21
undergraduate
  7:12
understand 5:12,
  13:21 15:3
understanding
  7:23
United 4:10

                V

vendor 24:22
verification 26:4,6
verified 9:24 26:2
versus 4:8
VI 20:20 24:24,25
vice-president
  24:23
video 5:3,13,15
videoconference
  4:20
VIII 4:8 5:23 11:7
  14:16 17:2 20:20,
  23
visited 10:24

                W

wanted 15:19
Watson 9:8
wife 9:2
William 4:2,7,9
  5:20 14:5,17
woman 26:3
Womble 4:16
work 6:16,21 8:5,
  11,13,16 19:7
  21:20,23 24:20,21

worked 8:2
working 12:8,10
Wright 17:16,19
written 15:23,25

                Y

year 26:15
years 6:13
Yvonne 26:3